144 Ind. App. 63 (1968)
242 N.E.2d 642
STATE EX REL. MASS TRANSPORTATION AUTHORITY, ETC.
v.
INDIANA REVENUE BOARD ET AL.
No. 767-A-39.
Court of Appeals of Indiana.
Filed December 31, 1968.
Transfer denied with opinion February 6, 1969.
Rehearing denied with opinion and order December 16, 1969.
*64 John Neff, Richard M. Givan, Indianapolis, and Lieber & Neff, Bowen, Myers, Northam & Givan, of counsel, Indianapolis, for plaintiff.
John J. Dillon, Attorney General, Charles S. White, Chief Counsel, Virginia D. McCarty, Deputy Attorney General, for defendants.

ORIGINAL ACTION
COOPER, J.
From the record now before us, it appears that the plaintiff filed a petition in the Superior Court of Marion County, Room No. 3, to mandate the defendants to comply with House Enrolled Act No. 1818, passed by the General Assembly during its 1967 Session. Specifically the petition prayed that:

*65 "An order issued against Defendants, mandating them to administer and enforce the inheritance tax laws of Indiana as they now exist including the Acts of the General Assembly of Indiana, 1931, Chapter 75, Section 36, as amended by the 1967 General Assembly.
"Plaintiff further prays that an order issue against Defendants, enjoining them from continuing to apply the taxes levied and collected under the inheritance tax law of Indiana according to the Acts of the General Assembly of Indiana, 1931, Chapter 75, Section 36, as it existed prior to its amendment by the 1967 Indiana General Assembly."
The trial judge granted a temporary restraining order. The Attorney General on behalf of the defendants, prior to the hearing date set by the Superior Court of Marion County, filed a petition to transfer the cause to this Court pursuant to Ch. 7, of the Acts of 1965, (2nd Spec. Sess.). After a hearing by this Court, sitting In Banc, on the petition to transfer, we assumed jurisdiction and transferred the cause to this Court and dissolved the existing restraining order.
The Attorney General, on behalf of the defendants, filed a demurrer to the complaint on the ground that it failed to state a cause of action. Subsequently we overruled the demurrer. Thereafter, both parties filed separate motions for judgment on the pleadings.
The sole question now before us to be decided is whether House Enrolled Act No. 1818 became the law of the State under the following circumstances.
House Enrolled Act No. 1818 amended Acts of 1931, Ch. 75, as amended, and Acts of 1947, Ch. 10, and provided for the distribution of inheritance tax funds on the basis of ten percent (10%) to the State and ninety percent (90%) to the Mass Transportation Authority of Marion County, the plaintiff herein.
If the bill became law, the relief prayed for in the petition should be granted. If it did not become law, judgment should be entered for the defendants.
*66 The facts in this cause are undisputed and without conflict. The bill in question was duly passed in both Houses of the 95th General Assembly; duly signed by the respective officials of both the Senate and the House and presented to the Governor, with other bills, whose office gave a receipt therefor. This presentment was made on the last day of the 1967 Legislative session. The Governor did not approve the bill by signing it and sending it to the office of the Secretary of State, nor did he send it to the office of the Secretary of State unsigned, nor did he return it with his objections thereto, as provided in Article 5, Section 14, of the Constitution of Indiana. Therefore, the bill was neither published nor distributed to the Clerks of the Circuit Courts of the several counties of the State by the Secretary of State with other bills.
It is agreed by all concerned that the bill is still in the Governor's office. Plaintiff contends that this bill became law after five days since it contained an emergency clause, pursuant to Article 5, Section 14 of the Constitution of Indiana, and the defendants contend that it did not, citing the last sentence of Article 5, Section 14.
Article 5, Section 14 of the Constitution of the State of Indiana reads as follows:
"§ 14. Bills signed or vetoed.  Every bill which shall have passed the General Assembly, shall be presented to the Governor; if he approve, he shall sign it; but if not, he shall return it, with his objections, to the House in which it shall have originated; which House shall enter the objections, at large, upon its journals, and proceed to reconsider the bill. If, after such reconsideration, a majority of all the members elected to that House shall agree to pass the bill, it shall be sent, with the Governor's objections, to the other House, by which it shall likewise be reconsidered; and, if approved by a majority of all the members elected to that House, it shall be a law. If any bill shall not be returned by the Governor within three days, Sundays excepted, after it shall have been presented to him, it shall be a law, without his signature, unless the general adjournment *67 shall prevent its return; in which case it shall be a law, unless the Governor, within five days next after such adjournment shall file such bill, with his objections thereto, in the office of Secretary of State; who shall lay the same before the General Assembly at its next session, in like manner as if it had been returned by the Governor. But no bill shall be presented to the Governor, within two days next previous to the final adjournment of the General Assembly."
The citizens of our State generally recognize, and our Courts judicially know, that the legislative and the executive branches of our state government have, for a period of years, disregarded the clear mandate of the Constitution which is the organic law of this State, concerning how bills passed by the General Assembly are to become law. We feel that the time has come for the judiciary to recognize and denounce this manifest departure from the mandates given to the legislative and executive branches of our government by our Constitution.
We judicially know that the Constitution of Indiana, in Article 5, Section 14, provides:
"no bill shall be presented to the Governor within two days next previous to the final adjournment of the General Assembly."
We also judicially know that the common practice has flourished of presenting important and vital bills to the Governor within the last two days of the session, contrary to the constitutional prohibition, and that several of the recent governors have accepted such bills within the last two days of such sessions and in most cases acted upon such bills in the method provided by the constitution, and further, that bills have been presented after the legislature should have adjourned sine die within the term required by the constitution of the State of Indiana.
Likewise, we also judicially know that for years, the executive branch of our state government has illegally and unlawfully *68 pocket vetoed various bills which have been duly enacted by the legislature. For example, the legislative journals show that in the year 1965, there were 19 House and 10 Senate bills pocket vetoed; that in 1967, there were 14 House and 19 Senate bills pocket vetoed. There is no authority, either from the Constitution, or from a Supreme Court decision interpreting our Constitution, which gives the Governor the power to pocket veto legislation which has been enacted by the General Assembly.
We, further, judicially know that one of the greatest students of constitutional law that was ever privileged to sit on the Supreme Court of Indiana, the late Justice Gilkison, questioned the authority of the legislature to stop the clocks in the respective chambers of each house on the last day of each session, in his dissenting opinion in the case of State, ex rel. Cline v. Schricker (1949), 228 Ind. 41, 88 N.E. 547, at page 49.
Thomas Paine in 1791, defined and explained a constitution of a republic thus:
"A constitution is not a thing in name only, but in fact. It has not an ideal, but a real existence; and whatever it cannot be produced in visible form, there is none. A constitution is a thing antecedent to government, and a government is only a creature of a constitution. The constitution of a country is not the act of its government, but of the people constituting a government. It is the body of elements, to which you can refer, and quote article by article; and which contains the principles on which the government shall be established, the manner in which it shall be organized, the powers it shall have, the mode of elections, the duration of parliaments, or by what other name such bodies may be called; the powers which the executive part of the government shall have; and, in fine, everything that relates to the complete organization of a civil government, and the principles on which it shall act, and by which it shall be bound. A constitution, therefore, is to a government, what the laws made afterwards by that government are to a court of judicature. The court of judicature does not make the laws, neither can it alter *69 them; it only acts in conformity to the laws made; and the government is in like manner governed by the constitution."
These same principles also apply today to our own state Constitution. When we, as Judges of an appeal court, have before us a case such as this, in which it appears that those in power, after having sworn to uphold and defend the Constitution have openly and flagrantly violated its provisions, we must not ignore such illegal actions and remain silent, for to do so would thereby condone such behavior, and we would be betraying the citizens whose rights and privileges under the Constitution we have sworn to protect.
If the Courts as the guardians of the rights guaranteed to the people by the constitution should ever relax their vigilance in enforcing the provisions of the Constitution and yield to the pressures of any groups having special interests, including officeholders in the legislative and executive branches of government, our present system of constitutional government would collapse.
In the volume, Constitutional Limitation, by Cooley, 8th Edition, Volume 1, page 355, Cooley makes the following statement concerning state constitutions:
"That instrument has been aptly termed a legislative act by the people themselves in their soverign capacity, and is therefore the paramount law."
On page 81 of the same volume, we find the following statement:
"By the constitution which they establish, they not only tie up the hands of their official agencies, but their own hands as well; and neither the officers of the State, nor the whole people as an aggregate body, are at liberty to take action in opposition to this fundamental law."
Article 5, Section 14 of the Constitution of Indiana prescribes the duties of a Governor relating to all bills passed *70 by the General Assembly that are received by him, regardless of when so received. It is to be noted that the Constitution does not prohibit the Governor from acting upon any bill received by him during the session. It necessarily follows that after the Governor receives any bill during the session, he must act upon it in one of the ways provided for by the Constitution, as hereinabove set forth.
The Constitution expressly states that if adjournment shall prevent the bill's return to the General Assembly, "it shall be a law unless the Governor, within five days next after such adjournment, shall file such bill, with his objections thereto, in the office of the Secretary of State."
It was stated in Opinions of the Attorney General, 1935, at pages 87 and 88 as follows:
"III.
"The Governor has five days next following the final adjournment of the General Assembly within which to consider and act upon enrolled bills presented to him on Monday, March 11, 1935. This is in accordance with the provisions of section 14 of Article 5 of the Constitution of the State of Indiana.
"IV.
"Enrolled bills presented to and duly received and receipted for by the Governor on either Saturday, March 9, 1935, Monday, March 11, 1935, will become a law without the signature of the Governor unless the Governor shall sign the same or refuse to sign and file such enrolled bill with his objections thereto with the Secretary of State within the five days next after the final adjournment of the Seventy ninth session of the General Assembly." (Author's note: A review of the legislative journal for 1935 shows that March 11, 1935, was the last day of the session.)
It has been held also that where an act is not approved by the Governor and the same takes effect by lapse of time by reason of his failure to return the same with his objections thereto, such Act, when it contains an emergency clause, as does House Enrolled Act No. *71 1818, the bill we are now considering will go into effect immediately upon the expiration of time given by the Constitution for the Governor to consider and return bills. Constitution of the State of Indiana, Article 4, Section 28, State, ex rel White v. Grant Superior Court et al. (1930), 202 Ind. 197, 211, 172 N.E. 897; Stalcup et al. v. Dixon, 136 Ind. 9, 35 N.E. 987; State of Indiana ex rel. Colbert v. Wheeler, 172 Ind. 578, 89 N.E. 1, 19 Ann. Cas. 834; Shutt v. The State of Indiana ex rel. Cain, 173 Ind. 689, 89 N.E. 6.
Our Supreme Court has, in the case of State ex rel. Grant, supra, at page 210, held that the last sentence of Article 5, Section 14, is an inhibition only on the legislature and is in no way binding upon the Governor. At no place in the Constitution is the Governor given the authority or power to pocket veto any bill or enactment of the General Assembly presented to him during a session, regardless of the time when it is presented to him.
In interpreting Article 5, Section 14 of our State Constitution, our Supreme Court has expressly stated in the case of Tarlton v. Peggs (1862), 18 Ind. 24, 25, the following:

"This provision was intended to prevent the possibility of the Governor withholding a bill and thus preventing its becoming a law" (our emphasis).
Also, in the case of State ex rel. White v. Grant Superior Court et al. (1930), 202 Ind. 197, 211, we find the following statement:
"The proceedings by the General Assembly and the actions of the Governor necessary for the passage of a bill and to make it a law are stated in the Constitution. The necessary procedure, as thus stated by the organic law, may not be enlarged, curtailed, changed or modified by any governmental authority (our emphasis).
The Court went on to state further on page 211 of the opinion as follows:

*72 "This bill, after its passage and enrollment and presentation to the Governor, was not delivered by the Secretary of State to the state printer, and it was not printed under authority together with the other laws passed by the General Assembly at its seventy-sixth session. This bill had in it an emergency clause to the effect that `the same shall thereafter be in force from and after its passage,' etc. The Constitution by Art. 4, § 28, provides that where an emergency shall be declared in the preamble or in the body of the law, it is unnecessary for it to become a law that it be published and circulated in the several counties of the state by authority. This section has been plainly interpreted by the court that a bill will become a law at the expiration of the time given to the Governor by the Constitution to file the bill with the Secretary of State, together with his (the Governor's) objections thereon, where the bill provides that an emergency exists for it to become effective upon its passage. State ex rel. v. Wheeler (1909), 172 Ind. 578, 588, 89 N.E. 1, 19 Ann. Cas. 834; Shutt v. State ex rel. (1909), 173 Ind. 689, 89 N.E. 6."
Under the principles enunciated in the case of State of Indiana ex rel. Colbert v. Wheeler (1909), 172 Ind. 578, 89 N.E. 1, this Court, in determining whether or not the bill became law, had the duty to examine all sources of information made available to us by the parties which would clarify the factual situation concerning this bill. From this information, we find that the Governor accepted House Enrolled Act No. 1818 together with several other House Enrolled Acts which became law with the Governor's signature on the last day of the session. It is, therefore, clearly established that the Governor did, in fact, accept this group of House Enrolled Acts, including No. 1818, the one in question.
The Constitution does not give the Governor the authority to conditionally accept an act at any time. Therefore, we must hold that House Enrolled Bill No. 1818, which had an emergency clause, which was properly authenticated by the presiding officers of both the House and Senate, and was accepted by the Governor, who failed to file the same within five days with the Secretary of State *73 together with his objections thereto, became the law of the State of Indiana without the Governor's signature. In support of the foregoing statement, see both the majority and the dissenting opinions in the case of Hendricks, Secry., etc. v. State ex rel. Northwest Indiana Crime Commission, Inc., et al. (1946), 245 Ind. 43, 196 N.E.2d 66.
When an Act is received by the Governor, but not signed by him, nor vetoed and returned to the House in which it originated, such Act, when it contains an emergency clause, such as the one we are now considering, will go into effect immediately after the lapse of the five day period provided for by the Constitution and become the law, unless the Governor shall file such bill, with his objections thereto, in the office of the Secretary of State.
We are of the expressed view that what we have stated heretofore should have no retrospective effect. To do so, would produce an uncertainty concerning the fundamental law as it has existed in the past. Such uncertainty would no doubt result in utter chaos and confusion as to the validity and effect of past legislation. As a result, we believe that the holding of the case at bar should be applicable to the 95th session of the General Assembly and all sessions thereafter. In re Todd (1934), 208 Ind. 168, 193 N.E. 865; Swank et al. v. Tyndall et al. (1947), 226 Ind. 204, 78 N.E.2d 535; Johnson v. New Jersey (1966), 384 U.S. 718, 16 L.Ed.2d 882, 86 S.Ct. 1772.
The plaintiff's motion for judgment is granted and the defendants' motion for judgment is denied.
Judgment is entered for the plaintiff with costs against the defendants.
Carson, C.J., Cook, P.J., Pfaff and Smith, J.J., concur.
Faulconer, J., dissents with opinion in which Bierly and Prime, J.J., concur.
*74 Note: Judge Cook participated in the argument and the conferences thereafter and concurred in the majority opinion. His untimely death occurred before the final draft of this opinion was completed and delivered to the Clerk's office.

DISSENTING OPINION
FAULCONER, J.
Plaintiff filed a petition in the Superior Court of Marion County, Room No. 3, to mandate defendants to comply with House Enrolled Act No. 1818, passed by the General Assembly during its 1967 Session. Specifically the petition prayed that,
"[A]n order issue against Defendants, mandating them to administer and enforce the inheritance tax laws of Indiana as they now exist including Acts of the General Assembly of Indiana, 1931, Chapter 75, Section 36, as amended by the 1967 General Assembly.
"Plaintiff further prays that an order issue against Defendants, enjoining them from continuing to apply the taxes levied and collected under the inheritance tax law of Indiana according to the Acts of the General Assembly of Indiana, 1931, Chapter 75, Section 36, as it existed prior to its amendment by the 1967 Indiana General Assembly."
The trial judge granted a temporary restraining order, without notice, hearing or bond. The Attorney General of Indiana on behalf of the defendants, prior to the hearing date set by the Superior Court of Marion County, filed a petition to transfer the cause to this court pursuant to ch. 7 of Acts 1965 (2nd Spec. Sess.). After hearing on the petition to transfer by this court, In Banc, we transferred the cause to this court and dissolved the restraining order.
The Attorney General, on behalf of the defendants, filed a demurrer to the complaint on the ground that it fails to state a cause of action. Subsequently we overruled the demurrer. Thereafter both parties filed separate motions for judgment on the pleadings.
The only question before us in this cause is whether House Enrolled Act No. 1818 became a law.
*75 House Enrolled Act No. 1818, amended Acts 1931, ch. 75, § 36, p. 192, § 7-2436, Burns' 1953 Replacement, and provided that inheritance tax funds should be distributed, 10% to the State and 90% to the Mass Transportation Authority of Marion County, plaintiff herein.
If the bill became law the relief prayed for in the petition should be granted. If it did not become law, judgment should be entered for the defendants.
The facts in this cause are undisputed and without conflict. The bill in question was duly passed in both Houses of the 95th General Assembly; duly signed by the respective officials of both the Senate and the House and taken to the Governor's office on the last day of the 95th Session of the General Assembly with other bills, which office gave an unsigned receipt therefor. The Governor did not approve the bill by signing it and sending it to the office of the Secretary of State, nor did he send it to the office of the Secretary of State unsigned, nor did he return it with his objections thereto, as provided in Art. 5, § 14, of the Constitution of Indiana.
This bill was neither published nor distributed by the Secretary of State to the clerks of the Circuit Courts of the several counties of the State with other bills.
It is agreed by all concerned that the bill is still physically in the Governor's office. Plaintiff contends that this bill became law after five days, pursuant to Art. 5, § 14, of the Constitution of Indiana, and defendants contend that it did not, citing the last sentence of Art. 5, § 14, supra, which reads as follows:
"But no bill shall be presented to the Governor, within two days next previous to the final adjournment of the General Assembly."
This case is governed by State, ex rel. v. Fortieth Judicial Circuit (1931), 202 Ind. 354, 174 N.E. 423. The facts are *76 strikingly similar and are set out at page 356 of 202 Ind., as follows:
"Senate bill No. 165 was passed by both houses and was properly signed by the presiding officer of each. On March 11, 1929, at 4:40 p.m., upon request of the Governor, the secretary of the senate delivered said bill to the office of the Attorney-General for his opinion touching the legality thereof. That thereafter, between 5 p.m. and 7 p.m., said senate bill No. 165 was, at the request of the Governor, delivered to the office of the Governor, and the Governor talked with various persons who were interested in said bill concerning the same.
"The final adjournment of the 76th session of the General Assembly occurred at 12 p.m. midnight March 11, 1929.
"Said bill did not contain any emergency clause, neither was it published nor distributed to the clerks of the circuit courts of the several counties of the state, or declared by the Governor to be in effect as required by § 28, Art. 4, State Constitution, § 131 Burns' 1926, and § 246 Burns' 1926.
"Said Senate bill No. 165 was never approved by the Governor, neither was it returned with his objections. The bill was retained by the Governor and is still in his office."
Further, the court, in holding that the bill did not become law stated at page 358 of 202 Ind. as follows:
"The bill here in question was presented, or attempted to be presented, to the Governor between 5 and 7 o'clock p.m. on the last day of the session. No official action was taken by him, neither was there any obligation imposed upon him to act, as the bill was not presented to him more than two days next previous to the final adjournment of the General Assembly. We, therefore, conclude that relatrix' petition for an alternative writ of mandate is insufficient and respondants' demurrer thereto should be sustained."
Plaintiff points out that House Enrolled Act No. 1818 contained an emergency clause and, therefore, became law at the expiration of five days, and cites State ex rel. v. Grant Superior Court (1930), 202 Ind. 197, 211, 172 N.E. 897, wherein the court stated that Art. 4, § 28 of the Constitution *77 of Indiana provides that "where an emergency shall be declared in the preamble or in the body of the law, it is unnecessary for it to become a law that it be published and circulated in the several counties of the State by authority", and that "[t]his section has been plainly interpreted and the bill will become a law at the expiration of the time given to the Governor by the Constitution to file the bill with the Secretary of State, together with his (the Governor's) objections thereon, where the bill provides that an emergency exists for it to become effective upon its passage." However, in State ex rel. v. Grant Superior Court, supra, the court determined that the bill was presented to the Governor on Saturday preceding the Monday the Legislature adjourned, and the court held that Sunday was not excluded in determining the days. Therefore, the Grant case is not authority for the proposition of plaintiff that the emergency clause made the law effective after the expiration of five days.
The emergency clause would not have made House Enrolled Act No. 1818, presented to the Governor during either of the last two days of the session and retained by him without any further action on his part, a law by mere lapse of time. Such a clause serves merely to make law, properly presented under Art. 5, § 14 of the Constitution of Indiana, effective without publication.
"The last sentence of the same section, the one under consideration, applies only to the General Assembly, and is in no way an inhibition to the Governor to receive a bill if sought to be presented to him by the General Assembly, but has to do only as an inhibition and a restraint of power upon the General Assembly." State ex rel. v. Grant Superior Court, supra. (1930), 202 Ind. 197, 210, 172 N.E. 897.
To ignore the clear and plain language of the last sentence of Art. 5, § 14, supra, would be contrary to the well established fundamental rules of constitutional construction that no word or words shall be assumed to be mere surplusage.
*78 I cannot agree that the decision of our Supreme Court in Hendricks, Secy., etc. v. State N.W. Crime Comm. (1964), 245 Ind. 43, 196 N.E.2d 66, 2 Ind. Dec. 722, is authority for plaintiff's position. A reading of the two majority and one dissenting opinions discloses that said case involved only an interpretation of that part of Art. 5, § 14 of the Indiana Constitution reading "unless the general adjournment shall prevent its return;" and the issue of presentation of a bill "within two days next previous to the final adjournment" was neither raised, briefed, argued or considered by the court. However said decision does indirectly support my position in the present case. In Judge Achor's concurring opinion, at pages 54, 55 of 245 Ind. is the following language, "However, the Indiana constitution contains express and explicit provision that (except as to bills sent to the Governor during the last two days of the session) all bills passed by the Legislature and presented to the Governor but not signed by him must be returned to the Legislature for reconsideration."
Again, at page 60 of 245 Ind. Judge Achor states, "furthermore, any bill which is presented to the Governor (except within the last two days of the session) must be returned to the next session of the Legislature for its action, notwithstanding the general adjournment thereof."
For the reasons above set forth, it is my opinion that House Enrolled Act No. 1818 did not become law without the signature of the Governor because it was presented, or attempted to be presented, to the Governor within the two-day limitation as set forth in the last sentence of Art. 5, § 14 of the Constitution of Indiana.
Plaintiff's motion for judgment therefore should be denied and defendants' motion for judgment sustained.
Therefore, in my opinion, judgment should be entered for the defendants, with costs against the plaintiff.
*79 Bierly and Prime, JJ., concur.
JOSEPH D. GEESLIN JR., CARLETON L. PHILLIPPI and DURWOOD STRANG, as members of State Board of Tax Commissioners of Indiana, RICHARD D. GREEN, as Inheritance Tax Administration Defendants.[1]

ON PETITION FOR REHEARING
PER CURIAM.
A number of issues have been raised in the course of this action which the court deems expedient and necessary to discuss.
This case was originally filed in the Superior Court of Marion County and was removed to this court pursuant to Acts 1965 (2nd Spec. Sess.), ch. 7, § 2, p. 28, Burns' Ind. Stat. Ann., § 3-2121, 1968 Repl., on petition of the Attorney General of Indiana. Section 3 of the Act (§ 3-2122) provides that,
"... the attorney-general shall remove such case to the Appellate Court of Indiana whenever he deems it necessary or desirable for the purposes of the uniform and orderly enforcement and effectiveness of acts of the general assembly of state-wide public interest and concern that the case be determined by a court with state-wide jurisdiction." (Emphasis supplied.)
Following the removal, hearings were held, briefs were filed and arguments were made by both parties to the issues on the merits, all pursuant to statute, and thereafter, on December 31, 1968, this court, speaking through Judge Cooper, *80 entered judgment in favor of plaintiff and against defendants.[2]
The thrust of that judgment was to hold that House Enrolled Act No. 1818, passed by the 1967 General Assembly of Indiana was unconstitutionally vetoed by inaction of the Governor, and thus, this court deemed said Act to be in full force and effect from and after its effective date.
This court in the traditional exercise of its judicial power simply interpreted the law. Article III, § 1 of the Constitution of Indiana specifically divides the functions of government into three co-equal, exclusive branches. The function of interpreting the law is vested exclusively in the judicial branch. The decision of this court did no more and no less. This court did not usurp a function of the Legislature; to the contrary, life was given to their action which theretofore had been unconstitutionally denied.
Subsequently, the defendant filed its petition to transfer to the Supreme Court, which petition was denied with opinion[3], thus affirming the judgment[4] of this court of December 31, 1968.
Thereafter the General Assembly of 1969 passed House Enrolled Act No. 1115 (Acts 1969, ch. 20), which purported to repeal retroactively House Enrolled Act No. 1818 of the 1967 General Assembly.
The pleadings filed herein serve to raise the following issues for consideration:

*81 1. The validity of the substitution of parties-defendants;
2. The effect of the purported retroactive repealer;
3. The right of the defendants to interpose the defense of sovereign immunity;
4. The effect of the "separation of powers" doctrine upon the decision of this court.

I. SUBSTITUTION.
Defendants argue that, with the exception of John K. Snyder, Treasurer of the State of Indiana, and as a Member of the Indiana Revenue Board, all other parties-defendants were improperly substituted to the judgment of this court dated December 31, 1968, by the court on its own motion; were never served with process; and should not be bound by that judgment.
As authority for the above proposition, defendants cite Cox v. United States, 9 Wall (7 U.S. 298), 19 L.Ed. 579, 583, (1870). The Cox holding, however, is not applicable here.
The question raised in Cox was whether the newly-appointed Secretary of the Interior could be substituted without notice as a party to a writ of mandamus. The judgment of the district court in Cox mandated the former Secretary of the Interior and his successor in office to grant a patent for certain lands. The issuance of a patent was held by the Supreme Court to be an act within the discretion of the Secretary of the Interior, and thus a successor in office would have to be given the opportunity to exercise his discretion and would not be bound by a writ issued before such opportunity was afforded. The determinative rationale of the Cox decision was that the courts have no power to mandate the discretionary acts of an executive official.
However, the court then distinguished the situation from that where the official was carrying out a ministerial function, as stated at page 583 of 19 L.Ed.:

*82 "Discussion of the principle, however, seems to be unnecessary, as all of the cases appear to affirm the same rule, that the writ cannot issue where discretion and judgment are to be exercised by the officer, and only in cases where the act required to be done is merely ministerial, and where the relator is without any other adequate remedy."
In the instant case, all actions required of the defendants under House Enrolled Act No. 1818 are ministerial in nature. Under Article 6, § 1 of the Constitution of Indiana, the Treasurer and Auditor of this State are commanded to "... perform such duties as may be enjoined by law; ..." The duties of the Auditor in this regard are not discretionary but strictly ministerial and, thus, the question of due process raised in Cox is not present here. The prescription of responsibility may not be altered, for the reason that there is no element of discretion available.
The precise issue here raised has been answered by our Supreme Court. In Wood, Treas. v. State, ex rel., 155 Ind. 1, at pages 7-8, 55 N.E. 959, at pages 961-62, (1900), the Supreme Court established the following precedent for substitution of public officeholders:
"The petition and alternative writ aver that a prior demand was made of Delos N. Weaver as treasurer of Elkhart county, and who was at the time such officer, and by him as such officer refused; that, pending the action, Weaver's term expired, and appellant, Wood, succeeded him in the office January 1, 1899; which fact, being disclosed by a supplemental complaint, the court substituted Wood as the party defendant.
"The office of county treasurer is a continuing one. The remedy sought was the payment of money by the officer,  a purely ministerial function. The demand was against Weaver, the officer, and not against Weaver, the individual, and when Weaver went out, and Wood went in, the party defendant was the same, but represented by another individual. Wood assumed the office impressed with all the legal duties and obligations that rested upon the officer *83 he then was. He took the office lis pendens, and was bound to know the character of the plaintiff's action, and that the complaint charged that a demand of payment had been properly made of his predecessor, and refused, and if it was his pleasure to pay the plaintiff's demand without judicial determination, it was his duty to do so without further demand. To hold otherwise would be to place it in the power of such officers, by the expiration of terms of office and resignations, effectually to defeat the ends of justice."
No valid distinction can be drawn between the office of County Treasurer, which is a constitutional office, and the offices held by defendants in the instant case.
While the duties of the Auditor and the Treasurer of this State are not entirely ministerial, the duties required of them by House Enrolled Act No. 1818 are totally and completely ministerial in nature. Thus, it was not improper for this court to substitute the nominal defendants on its own motion.
The court is further constrained to point out that on numerous occasions[5], the parties-defendants appeared voluntarily and generally in this cause without raising the issue of our jurisdiction over them, and thus, error, if any, has been waived.
Additionally, it has been held that where a successor party to a cause voluntarily appears, any error in service of process is waived. See: Finch, Admr. v. McClellan, 77 Ind. App. 533, 130 N.E. 13, 131 N.E. 236 (1922), (Transfer denied); Holland v. Holland, et al., 131 Ind. 196, 30 N.E. 1075 (1892); *84 Acts 1881 (Spec. Sess.), ch. 38, § 56, p. 240, Burns' Ind. Stat. Ann., § 2-803, 1967 Repl.
The two issues raised by the defendants, as demonstrated, present no error.
The substitution was a valid exercise of judicial discretion (Wood, supra) and by voluntarily appearing in this cause, the provisions for notice were waived. Section 2-803, supra.
The named defendants in this action have all been made parties by reason of their ministerial and representative capacities, and for no other reason. Their voluntary and general appearances have waived the error, if any, in the court's substitution.
As additional authority for the substitution, it is well established law in this State, that where a suit is maintained against a public officer, not the individual officeholder, then the successor in office becomes the interested party to the suit. See: Advisory Board, etc. v. State, ex rel., 170 Ind. 439, 85 N.E. 18 (1908); Schrader v. State, ex rel., 157 Ind. 341, 61 N.E. 72 (1901) State ex rel. v. Long, 174 Ind. 642, 92 N.E. 649 (1910).

II. RETROACTIVE REPEALER.
As a general rule in Indiana, the General Assembly may retroactively repeal legislation with two exceptions:
1. The General Assembly shall not impair vested rights;
2. The General Assembly shall not violate a constitutional guarantee. See: Johnson v. The Board of Commissioners of Wells County, et al., 107 Ind. 15, 8 N.E. 1 (1886); Osann v. Purported Town of Portage, 132 Ind. App. 695, 177 N.E.2d 666 (1962), (Transfer denied); Guthrie v. Wilson, 240 Ind. 188, 162 N.E.2d 79 (1959).
As the court shall point out herein, there is a third exception.
*85 In County Dept. of Pub. Welfare v. Potthoff, 220 Ind. 574, at page 582, 44 N.E.2d 494, at page 497 (1942), our Supreme Court stated that,
"... counties are political subdivisions of the State and that as such they have no vested or contractual rights in the disposition of funds derived from general taxation therein which are superior to the public policy of the State as declared by the Legislature."
In view of the Potthoff analysis, the exceptions noted above, standing alone, would not forestall the right of the General Assembly to repeal House Enrolled Act No. 1818 retroactively, since it could be successfully argued that a political subdivision of the State, such as the Mass Transportation Authority could not in and of itself acquire vested rights by virtue of legislative enactment.
The rationale of the Potthoff decision indicates that the grant to an agency of the State does not, and cannot, vest rights and can thus be retroactively and prospectively repealed by the General Assembly. House Enrolled Act No. 1115 of the 1969 General Assembly (Acts 1969, ch. 20) was, therefore, a legitimate and constitutional exercise of legislative power.
This squarely raises the effect of our judgment[6] which preceded the action of the retroactive repealer.
*86 In The C., C. & I.C.R.W. Co. v. The Board of Comm'rs. of Grant Co., et al., 65 Ind. 427, at page 438 (1879), our Supreme Court was confronted with a very similar situation and the following rule of law was established at that time:
"We are very loth, as a rule, to question the constitutionality of a statute, which has been deliberately enacted by the General Assembly, and has obtained the sanction of executive approval. We do not question, but we recognize with pleasure, the ability, the intelligence, the learning and the faithfulness to duty of the distinguished citizens who are chosen by the people, from time to time, to fill the legislative and executive departments of our State government. They, like the judges of our courts, are bound by their official oaths to support the constitution of the State."
And, further, at page 442,
"In what we have said, we do not question the power of the Legislature to enact general laws, regulating the practice in courts of justice, which may materially affect or change the decision of causes pending before the courts. But it seems to us, that it is not within the power of the Legislature, by a special act, directed to a particular case then pending before the courts, to change the decision of that case. Special legislation on such subject is prohibited by sections 22 and 23 of the fourth article of the constitution of this State." (Emphasis supplied.)
This precedent has been followed in Searcy v. The Patriot & Barkworks Turnpike Co. et al., 79 Ind. 274 (1881), and Citizens State Bank of Carmel v. Perisho, 77 Ind. App. 70, 130 N.E. 857 (1921).
In Searcy the Supreme Court, at pages 279-80 of 79 Ind., said:
"Without any extended examination or discussion of the question, we may say generally that we are of the opinion that the appellees, and especially the turnpike company, were bound and concluded by the judgment and decree of the court below, in the former suit, from enforcing the collection *87 of said assessment of benefits, or any part thereof, from the appellants and their co-plaintiffs, or either of them, or from the property of either of them, until such judgment and decree were set aside, annulled or reversed, by due course of law. It was not in the power of the General Assembly, while said judgment and decree remained in full force, to virtually dissolve and set aside the perpetual injunction thereby granted, and to authorize the collection from the appellants of the assessment of benefits, which a court of competent jurisdiction had declared to be illegal and invalid. The Columbus, etc., R.W. Co. v. The Board, etc., 65 Ind. 427, on page 440, and cases cited." (Emphasis supplied.)
Collaterally, in Henderson, Auditor of State v. The State ex rel. Moon, 58 Ind. 244 (1877), our Supreme Court held that where a controversy had not been reduced to judgment at the time the Legislature acted, jurisdiction was lost.
Relating the foregoing authorities to the instant case, the following analysis is required:
Plaintiff, Mass Transportation Authority of Marion County, Indiana, obtained, in this court, a judgment. Such judgment was entered of record on December 31, 1968. The effect of that judgment was to settle the respective interests of the parties to the suit. Subsequently, the General Assembly passed House Enrolled Act No. 1115 (Acts 1969, ch. 20), which we have just held was a legitimate exercise of legislative power. However, the application of House Enrolled Act No. 1115 with respect to the judgment in favor of the Mass Transportation Authority of Marion County, was invalid. See.: The C., C. & I.C.R.W. Co. v. Board of Comm'rs. of Grant Co., et al., supra; Searcy v. Patriot & Barkworks Turnpike Co., supra.
To hold, as defendants urged that the Act (House Enrolled Act No. 1115) prevailed in its application as to the judgment in favor of Mass Transportation Authority of Marion *88 County would deprive the Mass Transportation Authority of its judgment by legislative action. The General Assembly cannot interfere with a judicial determination. Article 3 § 1 of the Constitution of the State of Indiana. Without a doubt the General Assembly had every right to give prospective and retroactive effect to their legislation with the exceptions heretofore pointed out. However, the attempt to encroach upon the determination of a co-equal branch of government was an unwarranted and unconstitutional action by the General Assembly, and its application to the judgment of this court has no force and effect. It should be abundantly clear that this court has no intention of sacrificing that which the Constitution of this State guarantees to the judicial branch of government.
The court would emphasize that the application which it makes in this case with reference to the retroactive repealer applies only to this case and should not be construed as applying to any other case. This court will make appropriate application of the principles announced here when, and if, cases involving the same are before us.

III. SOVEREIGN IMMUNITY.
Defendants assert in their brief entitled, "Brief in Support of `Response to Order of this Court, November 19, 1969.'", the following:
"[T]his action is now an action to extract funds from the state treasury through use of state officers as nominal defendants, the State of Indiana being the real party defendant in interest."
Thus, defendants urge that this action should abate by reason of sovereign immunity.
In support of this proposition defendants cite Ford Motor Co. v. Dept. of Treas., 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1944). Although the Ford decision held that where a *89 money judgment is sought from a "subdivision" or "agency" or "department" of the State, and the State is the real party in interest, it is entitled to invoke its sovereign immunity, the United States Supreme Court stated that the court must look to the nature of the suit to determine whether it has been instituted against the State or against the individual officer. It is apparent from a review of the Ford decision that federal jurisdiction was predicated on an alleged violation of the 14th Amendment and the Commerce Clause of the Constitution of the United States. The action was dismissed by the Supreme Court under the provisions of the 11th Amendment to the Constitution of the United States. The Ford decision is in no way binding upon this court in the instant case.
Reviewing the facts before us, there are a number of reasons for refusing to accept the defense of sovereign immunity.
In Ellingham v. Dye, 178 Ind. 336, 99 N.E. 1, (1912), our Supreme Court upheld most forcefully the right of the judicial branch to review the acts of the legislative and the executive to determine their constitutionality. This rationale is highly persuasive. It would be entirely illogical for one branch of government to exceed its constitutional authority and then declare its immunity from judicial review by reason of sovereign immuniy. The Ellingham case is directed expressly to the ministerial functions of State officials which are governed by the Constitution or statutes.
Another argument in direct answer to the defense of sovereign immunity is based on the language of the removal statute itself. The statute indicates that it is specifically directed to actions of public officials, and not the State.[7] The *90 statute did not contemplate the State as a party to the action, and ipso facto the defense of sovereign immunity is not available.
The waiver theory is also persuasive. It would be at best unfair to permit the State to simply await the outcome of litigation and, if favorable, abide by it, and, if not, assert sovereign immunity as a belated defense.
In State ex rel. v. Smith, 85 Ind. App. 56, at pages 61-62, 152 N.E. 836, at page 838, (1926), this court noted the following:
"The state is the party, and the auditor the relator. Under the circumstances of this case, there was no offense against the sovereign power of the state in making it a party to the action. Hogston v. Bell (1916), 185 Ind. 536, 112 N.E. 883. Having provided, as a means of collection, that its debt might be collected by the usual procedure of foreclosure in the circuit court, it appeared to this action and, without a suggestion that it might not be sued herein, it answered in denial and affirmatively, and filed a cross-complaint, asking affirmative relief, and thereby, by fair implication, consented that it might be made a party to determine the priority of its lien, or as to whether its judgment had been satisfied in such foreclosure proceeding."
Notwithstanding the cogency and application of all of the above theories, the fact remains that, in the view of this court, the defense of sovereign immunity is simply not applicable in this case. Ellingham v. Dye, supra.

*91 IV. SEPARATION OF POWERS.

Defendants have generally raised the question of separation of powers because of what they allege is "... an attempt [by this court] to interfere with and direct the financial policy of the State of Indiana contrary to Article 3, § 1 of the Indiana Constitution."
Such an evaluation of determinations and orders of this court is wholly erroneous. It is the proper and legitimate function of any court to authorize execution on its judgments. To deny it this right would be to deny the existence of the judicial branch of government. Rooker v. Fidelity Trust Co., supra.
Sitting as a trial court, this court has interpreted the law. From that interpretation as it applies to House Enrolled Act No. 1818, certain duties and responsibilities devolved upon certain public officials. The substance of these duties was created by the Legislature, not this court. The responsibilities established were created by the Legislature, not this court. The method of appropriation of funds under the Act was designed by the legislature, not this court. To allege, in spite of these known facts, that this court is attempting to interfere with financial policy, is to exhibit a fearful lack of knowledge of the law and its workings.
For a full understanding of the order of payment entered simultaneously with this opinion, the court deems it necessary to consider the constitutional and statutory provisions pertaining to appropriation and payment of State revenues.
Article 10, § 3, of the Constitution of Indiana reads as follows:
"No money shall be drawn from the Treasury, but in pursuance of appropriations made by law."
House Enrolled Act No. 1818, which became law in spite of the unconstitutional pocket veto, as determined by our *92 judgment in this cause, complied with the requirements of Article 10, § 3, supra.
House Enrolled Act No. 1818 is in the strictest sense a revenue allocation amendment which provides for the allocation of revenues collected under the Inheritance Tax Act. (Acts 1931, ch. 75, as amended.) An allocation by law is an appropriation of revenues. See: Carr, Auditor et al. v. the State ex rel. Coetlosquet, 127 Ind. 204, 26 N.E. 778 (1890). The fact is that House Enrolled Act No. 1818 simply amended the proportions to be allocated, but the procedure of allocation and appropriation remained essentially the same.
In Carr, supra, at page 210 of 127 Ind., page 780 of 26 N.E., our Supreme Court held that an appropriation can be implied from the circumstances and, further, quoted favorably from a California case (McCauley v. Brooks, 16 Cal. 11), to the effect that the funds, when appropriated, need not be in the treasury. See also: Henderson, Aud'r. v. Board of Comm'rs. of State Soldiers', etc., Monument, 129 Ind. 92, 28 N.E. 127, 13 L.R.A. 169 (1891); Orbison v. Welsh, Governor, et al., 242 Ind. 385, 179 N.E.2d 727 (1962).
There is no apparent limitation on the rule, and the appropriation, once made, is sufficient to authorize money to be drawn from the treasury under the Constitution. The language of House Enrolled Act No. 1818 expressly makes an appropriation and the constitutional requirement is met.
Article 6, § 1, of the Constitution of Indiana provides simply that the Auditor and Treasurer of the State "... shall perform such duties as may be enjoined by law; ..."
1 R.S. 1852, ch. 7, § 2, p. 146, Ind. Stat. Ann., § 49-1702, Burns' 1964 Repl., sets out the duties of the Auditor of State. Paragraph "Eighth" of the Act reads as follows:
"Draw warrants on the treasurer for all moneys directed by law to be paid out of the treasury to public officers, or for any other object whatsoever, as the same may become payable, and every warrant shall be properly numbered."
*93 Again, there appears no limitation on the ministerial obligation of the Auditor, once the money is "... directed by law to be paid out ..." to draw a warrant on the Treasurer.
Paragraph "Fifth" of this Act (§ 49-1702, supra) referring to examination and liquidation of claims against the State as cited by the defendants, is not applicable where, as here, the "claim" is for enforcement of a valid legislative enactment containing an appropriation and allocation of inheritance tax revenues.
Acts 1859, ch. 138, § 8, p. 227, as amended by Acts 1937, ch. 168, § 1, p. 873, Ind. Stat. Ann., § 49-1810, Burns' 1964 Repl., reads as follows:
"The auditor of state shall at no time draw a warrant upon the treasurer of state [1] unless there be money in the treasury belonging to the fund upon which the same is drawn to pay the same, [2] and in conformity to appropriations made by law, and [3] on money actually in the treasury subject to the payment of the same; and the auditor of state shall enter upon his books the number, date, payee, and amount of every draft in favor of the treasurer of state, and properly charge and credit the same to the appropriate fund, so as to keep an exact debit and credit account with each particular fund in the treasury; and the auditor shall carefully file and preserve such claim as his voucher for issuing the warrant." (Emphasis and numbering supplied.)
Under the foregoing provision the Auditor is confronted with three limitations on the ministerial function of drawing a warrant.
Acts 1931, ch. 75, § 14, p. 192, as last amended by Acts 1957, ch. 318 § 6, p. 936, Ind. Stat. Ann., § 7-2414, Burns' 1969 Cum. Supp., provides as follows:
"Each county treasurer shall make a report, under oath, to the state board of tax commissioners on the first days of January, April, July and October, of each year, of all taxes received by him in the three [3] months next preceding under this act [§§ 7-2401  7-2411, 7-2412a  *94 7-2442], in resident decedents' estates, and credited to the state of Indiana, stating for what estate and by whom and when paid. The form of such report shall be prescribed by the state board of accounts. At the same time the county auditor shall issue his warrant payable to the treasurer of state for such inheritance taxes, interest and penalties as are due the state of Indiana complying with the provisions of section 7 [§ 7-2407] of this act, which warrant shall be stamped and countersigned by the county treasurer as required by law and transmitted to the state board of tax commissioners with his said report. The secretary of the board shall receipt and account for all warrants collected under the provisions of this act and shall deposit the same when received with the state treasurer in a special account to be created and known as the Inheritance Tax Account. Quietus shall be issued by the auditor of state to the state board of tax commissioners at the close of each month upon terms and conditions established for similar boards or commissions. It shall be the duty of the state board of tax commissioners to audit the reports provided for by this section. Shortages, as disclosed by said audit, shall be reported to and promptly covered by county treasurers and auditors concerned by issuance of warrants for the balance due. Excess payments as disclosed by the audit of reports shall be refunded by the board in the manner set out in section 17 [§ 7-2417] of this act and not paid into the state board of tax commissioners. For all such taxes collected by a county treasurer and not paid into the state board of tax commissioners within thirty [30] days from the time herein required, he shall pay interest at the rate of ten [10] per centum per annum, for which he shall be personally liable." (Emphasis supplied.)
Acts 1925 ch. 28, § 1, p. 69, Ind. Stat. Ann., § 61-202, Burns' 1961 Repl., reads, in pertinent part, as follows:
"From and after the first day of October, 1925, in addition to the revenue which accrues to and is a part of the general fund of the State, as now provided by law, the general fund of the state shall consist of:
.....
"Seventh. All inheritance taxes collected under and pursuant to law." (Emphasis supplied.)
*95 The foregoing statutory provisions mandate the following procedure: All inheritance tax revenues are placed in the Inheritance Tax Account which is maintained as part of the general fund. The monies are then appropriated according to the allocation schedule contained in House Enrolled Act No. 1818.
It is apparent that two of three limitations on the Auditor's ministerial duty to issue a warrant established in § 49-1810, supra, are not problematical here for the following reasons:
1. The fund (the general fund) exists; and
2. The appropriation was made by law through House Enrolled Act No. 1818, as judicially determined by this court.
The third element necessary for the Auditor to perform the ministerial function is that there be "... money actually in the treasury subject to the payment of the same; ...." (§ 49-1810, supra) (Emphasis supplied.)
According to the statutes set out above, and the interpretation of their provisions as herein set forth, if the general fund, into which inheritance tax revenues are placed, has sufficient monies to pay the amount allocated by the Act of the General Assembly, then the Auditor is bound by law to draw a warrant for that amount on the Treasurer of State, who is bound by law to honor it.
We are aware of the complexity of the issues involved in this appeal and the official and public concern which has developed as a result of the judgment entered. For that reason we have made every effort to give full hearing to the issues raised by both sides to this controversy.
It is fundamental to the continued existence of our constitutional form of government that controversies such as this be met within prescribed legal procedures and that the traditional constitutional powers granted to the several branches *96 of government be maintained separate and exclusive. It is not within the scope of the powers granted to the executive branch of government that it should sit as a super-judiciary to decide which laws and judicial determinations it will obey and which it will not. To hold otherwise, would be to deny meaning to the to the words of Article 3, § 1 of the Constitution of Indiana, which reads:
"The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided." (Emphasis supplied.)
The defendants have, by oath, declared their willingness to obey and uphold the Constitution of this State, and that includes the protection of the doctrine of separation of powers.
In Ellingham v. Dye, supra, at page 408 of 178 Ind., page 27 of 99 N.E., Judge Cox, speaking for our Supreme Court, eloquently expressed the constitutional philosophy which binds us all:
"It is a part of appellants' contention that, as the general rule is that courts will not issue writs that are unavailing, injunction should not be decreed in this. For it is assumed by counsel that the Governor, being invested by the Constitution with supreme executive authority, with control over the military forces of the State, the courts could not enforce the decree against the board of which the law makes him a member if he chose to disregard it. This consideration presents no reason for the court to refuse to exercise jurisdiction. It surely does not follow that compulsory action would be needed in aid of the writ. This is a government of law, and all are amenable to it. To the courts the people have given the power, and charged them with the duty to declare what it is; and this duty cannot be lightly disregarded however unpleasant and embrassing it may be. Without the aid of sword or purse, courts have met with little difficulty from disobedience of their decrees, and this *97 has come equally from a generally conscientious discharge of duty by the courts and a respect for the law which is inherent in our people. Where the question presented to a court is a judicial question, it would be sheer, inexcusable cowardice and a violation of duty for it to decline the exercise of its jurisdiction because of a lack of power to enforce its decree if other agencies of government should refuse to comply with it. Moreover, we have no right to reflect on any officer of a coordinate department, by entertaining the assumption that the law, as declared by the courts, might be disregarded."
 IN THE
 APPELLATE COURT OF INDIANA
 STATE OF INDIANA, on the relation of )
 the Mass Transportation Authority of )
 Greater Indianapolis, a municipal )
 corporation, )
 Plaintiff, )
 v. )
 INDIANA REVENUE BOARD, )
 EDGAR D. WHITCOMB, as a Member of )
 the Indiana Revenue Board, ) No. 767-A-39
 JOHN K. SNYDER, Treasurer of the State )
 of Indiana, and as a Member of the )
 Indiana Revenue Board, )
 TRUDY SLABY ETHERTON, Auditor of )
 the State of Indiana, and as a Member )
 of the Indiana Revenue Board, )
 INDIANA DEPARTMENT OF STATE )
 REVENUE, )
 JAMES O. MATHIS, as Commissioner of )
 the Indiana Department of State )
 Revenue, )
 THE STATE BOARD OF TAX )
 COMMISSIONERS, )
 JOSEPH D. GEESLIN, JR., CARLETON L. )
 PHILLIPPI, and DURWOOD STRANG, )
*98
 as Members of the State Board of Tax )
 Commissioners of Indiana, )
 RICHARD A. GREEN, as Inheritance Tax )
 Administrator, )
 Defendants.[1] )

ORDER
It appearing to this Court that pursuant to Order of the Court made and entered on November 19, 1969, James O. Mathis, as Commissioner of the Indiana Department of State Revenue and Richard A. Green, as Inheritance Tax Administrator of the State of Indiana, did on the 20th day of November, 1969, file with the Clerk of the Supreme and Appellate Courts duplicate certified computations of the amounts deposited by Marion County, Indiana, in the Indiana Inheritance Tax Account of the General Fund of the State Treasury for the calendar years 1967 and 1968.
It further appearing that plaintiff, State of Indiana, on the relation of The Mass Transportation Authority of Greater Indianapolis, a municipal corporation, did on December 2, 1969, file its Answer to Response to Order of This Court  November 19, 1969, which Answer accepts as true the certified computation hereinabove mentioned.
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Clerk of the Supreme and Appellate Courts transmit instanter a copy of said certified computation to Trudy Slaby Etherton, Auditor of the State of Indiana.
*99 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the said Trudy Slaby Etherton, Auditor of the State of Indiana, on or before December 22, 1969, draw and issue a warrant upon the General Fund of the Treasury of the State of Indiana for a sum equal to ninety percent (90%) of the amount so computed and certified and that she immediately present and deposit said warrant with the Clerk of the Supreme and Appellate Courts.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that John K. Snyder, Treasurer of the State of Indiana, honor said warrant when called upon to so do.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Clerk of the Supreme and Appellate Courts shall, upon receipt of said warrant, disburse the same as follows:
1. Said amount so deposited with the Clerk of the Supreme and Appellate Court of Indiana shall be disbursed by said Clerk to The Mass Transportation Authority of Greater Indianapolis, a municipal corporation, less the amount to be disbursed to the attorneys of record for The Mass Transportation Authority of Greater Indianapolis, a municipal corporation, in satisfaction of an attorneys' lien filed by said attorneys for the plaintiff on February 28, 1969.
2. The Clerk of the Supreme and Appellate Courts shall, upon receipt of the warrant representing ninety percent (90%) of State Inheritance Taxes remitted to the Indiana Department of State Revenue, Inheritance Tax Division, from Marion County, Indiana, which were deposited in the "Inheritance Tax Account" of the State Treasury for the period January 1, 1967, through and including December 31, 1968, disburse ten percent (10%) of said funds so remitted for the period beginning January 1, 1967, to and including December 31, 1967, to the attorneys of record for The Mass Transportation Authority of Greater Indianapolis, a municipal corporation, which ten percent (10%) disbursement is in satisfaction *100 of an attorneys' lien filed by the attorneys of record for the plaintiff herein on February 28, 1969.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a copy of this Order be served upon John K. Snyder, Treasurer of the State of Indiana; upon Trudy Slaby Etherton, Auditor of the State of Indiana; and upon Kendal E. Mathews, Clerk of the Supreme and Appellate Courts, by the bailiff of this court.
ORDERED this ____ day of December 1969, at Indianapolis, Indiana.
 _____________________
 JOHN W. PFAFF
 Chief Justice
White, J., Not participating.
NOTE.  December 31, 1968, opinion reported in 242 N.E.2d 642. December 16, 1969, opinion reported in 253 N.E.2d 725.
NOTES
[1] On December 31, 1968, the date of the judgment in this case, the named defendants were the then incumbent officeholders and were named in their capacities as such officeholders, viz: Roger D. Branigin, as a Member of the Indiana Revenue Board; John P. Gallagher, Auditor of the State of Indiana, and as a Member of the Indiana Revenue Board; William L. Fortune, Commissioner of the Indiana Department of State Revenue; and Larry P. Mohr and Herbert C. Holmes, as Members of the State Board of Tax Commissioners of Indiana; and T. Michael Smith, as Inheritance Tax Administrator. This court takes judicial notice that these named defendants are no longer in office, and the court, on its own motion, has substituted the present incumbents in office as the nominal defendants.
[2] State ex rel. Mass Transp. Auth. v. Indiana Revenue Bd., 144 Ind. App. 63, 242 N.E.2d 642, 16 Ind.Dec. 334 (1968).
[3] State ex rel. Mass Transp. Auth. v. Indiana Rev. Bd., 251 Ind. 607, 244 N.E.2d 111, 16 Ind.Dec. 449 (1969).
[4] Acts 1881 (Spec. Sess.) ch. 38, § 654, p. 240, Ind. Stat. Ann., § 2-3232, Burns' 1968 Repl.
[5] petition for rehearing, January 13, 1969;
Defendants' motion to dismiss, April 11, 1969;
Defendant John K. Snyder, motion for enlargement of time in execution of order, October 29, 1969;
Defendants' motion to vacate order, October 29, 1969;
Defendants' request for early ruling, November 4, 1969;
Defendants' motion to vacate order, November 7, 1969;
Defendants' petition for stay of execution, November 10, 1969;
Defendants' petition for rehearing, November 10, 1969;
Defendants' motion for new trial, November 14, 1969.
[6] The judgment entered December 31, 1968, was a final judgment. In Logan v. Sult, 152 Ind. 434, at page 438, 53 N.E. 456, at page 458 (1898), our Supreme Court said, "... for all purposes other than the right of appeal, the judgment, as soon as entered, read, and signed in open court is final, and may be enforced by appropriate writ according to its terms."

In explanation of post-judgment proceedings, the Supreme Court in Rooker v. Fidelity Trust Co., 198 Ind. 207, at page 212, 151 N.E. 610, at page 612 (1926), said:
"It is settled by authority, that after a final decree upon the trial of the merits of the case, by which the rights of the parties are settled, such further orders or decrees that may be necessary will be made to carry into effect the very rights decided upon the trial of the merits of the case, and that court will hear and determine and establish by order or decree anything necessary, that may be auxiliary to, or in execution of, the final decree on the merits."
[7] "Original jurisdiction to restrain or enjoin any public official from doing any act authorized by any act of the general assembly and to mandate any public official to do any act prohibited by any act of the general assembly is hereby conferred on the Appellate Court of Indiana. Said jurisdiction shall be invoked by the attorney-general's removal, pursuant to this act [§§ 3-2121  3-2131], of an action from the court in which it is filed, and thereafter the Appellate Court of Indiana shall have jurisdiction of all further proceedings in any case so removed. This grant of jurisdiction shall carry with it complete jurisdiction to hear and determine the entire action in which such relief is demanded, but if it appears to the Appellate Court of Indiana that there is no equity in the demand for injunctive or mandatory relief against any public official, the suit shall be dismissed without prejudice as to the other relief demanded, or it may be remanded to the court from which it was removed, without making any adjudication not necessary to the denial of injunctive or mandatory relief." (Emphasis supplied.) Section 3-2121, supra.
[1] On December 31, 1968, the date of the judgment in this case, the named defendants were the then incumbent officeholders and were named in their capacities as such officeholders, viz: Roger D. Branigin, as a Member of the Indiana Revenue Board; John P. Gallagher, Auditor of the State of Indiana, and as a Member of the Indiana Revenue Board; William L. Fortune, Commissioner of the Indiana Department of State Revenue; and Larry P. Mohr and Herbert C. Holmes, as Members of the State Board of Tax Commissioners of Indiana; and T. Michael Smith, as Inheritance Tax Administrator. This court takes judicial notice that these named defendants are no longer in office, and the court, on its own motion has substituted the present incumbents in office as the nominal defendants.