THE STATE v. CLOTTU.

PARENT AND CHILD.—*Legislative Control.*—How far the interference of the legislature in its control of the relation of parent and child should extend, is a question, not of constitutional power for the courts, but of expediency and propriety, which it is the sole province of the legislature to determine.

SAME.—*Liquor Law.*—*Minor.*—It is not a good defense to an indictment for selling intoxicating liquor to a person under the age of twenty-one years, that the father of the infant authorized the defendant to make the sale to the minor.

APPEAL from the Cass Circuit Court.

FRAZER, J.—This was an indictment against the appellee for selling intoxicating liquor (less than a quart) to a person under twenty-one years of age. It was determined by the court below as a matter of law upon the trial, that if the father of the infant authorized the appellee to make the sale to his son, such fact would be a good defense, and there was accordingly an acquittal upon that ground. The State reserved the question of law for the opinion of this court, and now presents it.

The statute (1 G. & H. 614), in language too distinct to leave any question as to its meaning, prohibits the sale of such liquors in quantity less than a quart at a time, except by persons who may have obtained license to do so; and then in language equally clear provides that such license shall not authorize a sale "to any person under the age of

twenty-one years," nor to one who is intoxicated, nor on Sunday, nor on the day of an election. It seems very clear to us that the legislature intended to protect the young from the temptations which tippling-houses were supposed to present, tending to lead them into habits generally conceded to be dangerous to health and character and to their usefulness and good order as citizens of the State. The question, then, seems to involve an inquiry concerning the constitutional authority of the legislature to do this thing.

We know of nothing in the State constitution prohibiting the legislature from passing such an act. We are without any argument in support of the ruling below, and cannot examine the particular grounds upon which the learned judge upon the circuit based his judgment, or upon which it may be supposed that it can be maintained, for the reason that we are not advised of them.

Sometimes courts have gone beyond the letter and fair implications from the letter of the written constitution of government, to find, in what is called the spirit of the instrument, inhibitions upon the exercise of legislative power; and where the act in question is obviously unwise, or to the judicial mind appears likely to result in consequences very mischievous or dangerous, the temptation to do so is certainly strong. But this search, outside of a constitution, for constitutional objections to an act of the legislature, though it has been, on rare occasions, indulged by courts of high character, is itself of doubtful propriety. It is the written constitution which is the supreme law to which legislation must conform, and not the views of even the wisest and purest judges of what should have been written in it, but was not; nor the theories of government which may be supposed to underlie it, without any expression to warrant the assumption. It may be possible to conceive of legislation so plainly beyond the scope of governmental power, or so flagrantly in conflict with natural right, that the courts may set it aside as unwarranted, though no clause of the constitution can be found prohibiting it. But the cases

must be rare indeed; and whenever they do occur, the inter-position of the judicial *veto* will rest upon such foundations of necessity that there can be little or no room for hesita-tion. If the matter be reasonably the subject of debate, it is an admonition that the court should stay its hand. The constitution limits the power of the judiciary as plainly as it does that of the legislature, and any disregard of this limitation is a plain subversion of the constitution, quite as mischievous in its tendencies and less easy of cure than legislative infractions of the same instrument. This limit upon the authority of the judiciary is plainly marked, and forbids the exercise of legislative power by the courts. If laws are merely unwise and mischievous, however clear this may be, the courts have no constitutional power to re-peal them; that power is vested in the legislature exclu-sively. The legislature of this State, within its legitimate sphere, does not lie fettered at the feet of this court, but is a department of government co-ordinate and equal, and up-on matters of legislation within its power it is superior, in-stead of inferior. This is so plain that it is scarcely nec-essary to express it. The remedy for merely unwise laws, then, is not by application to the courts, destitute of power to grant relief; but it is found in the ballot, in the election of a legislature to repeal or amend. Whether an act is ex-pedient or not, whether wise or not, whether right or not, are questions proper for discussion there, and wholly inad-missible in the courts, whose duty is, not to make or disre-gard law, but to administer it as it is written.

The duties and authority pertaining to the relation of parent and child have their foundations in nature, it is true. Nevertheless, all civilized governments have regarded this relation as falling within the legitimate scope of legislative control. Except in countries which lie in barbarism, the authority of the parent over the child is nowhere left abso-lutely without municipal definition and regulation. The period of minority is fixed by positive law, when parental control shall cease. Within this, the age when the child

may marry at its own will is in like manner defined.   The matter of education is deemed a legitimate function of the, state, and with us is imposed upon the legislature as a duty by imperative provisions of the constitution.   The right of custody, even, is sometimes made to depend upon considerations of moral fitness in the parent to be entrusted with the formation of the character of his own offspring.   In some countries, and even in some of our American states, education has for more than a century been made compulsory upon the parent, by the infliction of direct penalties for its neglect.   The right of the parent to ruin his child either morally or physically has no existence in nature.   The subject has always been regarded as within the purview of legislative authority.  . How far this interference should extend is a question, not of constitutional power for the courts, but of expediency and propriety, which it is the sole province of the legislature to determine.   The judiciary has no authority to interfere with this exercise of legislative judgment; and to do so would be to invade the province which by the constitution is assigned exclusively to the law making power.

We think the court below erred upon the question of law reserved.

Judgment for costs against the appellee.

*D. E. Williamson*, Attorney General, for the State.