## The Columbus, Chicago and Indiana Central R. W. Co. *v.* The Board of Commissioners of Grant County et al.

RAILROAD.—*Appropriation to.*—*Order of County Commissioners in Special Session Illegally Convened.*—*Enjoining Collection of Tax Voted.*—An order made by a board of commissioners, at a special session not legally convened, granting the prayer of a petition for an election by the voters of a township upon a proposed appropriation to aid in the construction of a railroad, pursuant to the act of May 12th, 1869, 1 R. S. 1876, p. 736, is illegal and void ; and the collection of a tax levied pursuant to such order and election may be enjoined at the suit of a tax-payer.

SAME.—*Petition.*—*Amount of Appropriation Asked.*—Where the amount of the appropriation asked by such petition exceeds two per centum of the assessed value of the taxable property of the township, as shown by the tax duplicate of the preceding year, the levy and assessment of a tax pursuant thereto are illegal and void, and the collection thereof may be enjoined at the suit of a tax-payer.

SAME.—*Lessor and Lessee.*—*Parties.*—The collection of taxes assessed in either of such cases upon a railroad belonging to one, and by it leased to another, railroad company, under an agreement that all taxes legally assessed on such property, and paid by the lessee, should be chargeable against the lessor, may be enjoined in an action by the lessor.

SAME.—*Curative Act.*—*Constitutional Law.*—In an action by the C., C. & I. C. R. W. Co., against the Board of Commissioners of Grant county, the county treasurer and the C., W. & M. R. R. Co., to enjoin the collection

of taxes assessed upon the property of the plaintiff as part of an appro-
priation voted by the voters of Mill township in said county, pursuant
to a petition asking an appropriation of a sum exceeding two per centum
of the assessed value of the taxable property of such township, filed, and
ordered to be voted on, at a special session of such board illegally con-
vened, the original complaint was filed and summons issued before, but the
amended complaint was filed after, the passage of the act of February 3d,
1877 Acts 1877, Reg. Sess., p. 113, legalizing the acts of such board of com-
missioners therein.

*Held*, on demurrer to the amended complaint, that the Legislature in pass-
ing, and the Governor in approving, such act, invaded the province of the
judiciary, and that, therefore, such act is unconstitutional and void.

From the Grant Circuit Court.

*N. O. Ross*, for appellant.

*R. W. Bailey* and *A. Diltz*, for appellees.

Howk, C. J.—This was a suit by the appellant, as plain-
tiff, against the appellees, as defendants, to enjoin the col-
lection of certain taxes levied and assessed against the
appellant's property.    The appellees jointly demurred to
the appellant's complaint, upon the ground that it did not
state facts sufficient to constitute a cause of action.    This
demurrer was sustained by the court below, and to this de-
cision the appellant excepted, and, refusing to amend its
complaint, judgment was rendered against the appellant,
on the demurrer, for the costs of this suit.

In this court, the only error assigned by the appellant is
the decision of the circuit court, in sustaining the demur-
rer to its complaint, and the only question thereby present-
ed for our decision is as to the sufficiency of the facts
stated in said complaint to constitute a cause of action.

In its complaint, the appellant alleged, in substance, that
it was, and for eight years before the commencement of
this suit had been, a railroad corporation organized and
existing under the general railroad laws of this State, and
during all that time had been, and yet was, the owner of a
railroad in this State, which extended from Union City to
Logansport, Indiana, passing through Mill township, in

Grant county, together with all the rolling stock, tools and material used in operating said railroad during the years 1874 and 1875; that, during the said years, said railroad was operated by the Pittsburgh, Cincinnati and St. Louis Railroad Company, under an agreement between the parties, which authorized the last named company to pay all taxes legally assessed against said property of the appellant, and charge the same to the account of the appellant; that the appellee, the Board of Commissioners of Grant county, had attempted to levy a special tax upon said property of the appellant, in Mill township, in said county, to aid the appellee, the Cincinnati, Wabash and Michigan Railroad Company, in the construction of a railroad through said township, and had caused the auditor of said county to enter upon the tax duplicate, for that purpose, against said property of the appellant, for the year 1874, a tax of $616.70, and for 1875 a tax of $551.81, which tax, for each year, was assessed against the appellant's property, but in the name of said Pittsburgh, Cincinnati and St. Louis Railroad Company, and, with penalties and interest added thereto, remained unpaid; that the tax duplicates for said years 1874 and 1875 were in the hands of the appellee Isaac Cox, the treasurer of said county, for collection, who had demanded payment thereof, and threatened to collect the same by distress and sale, unless the same were paid; that the said taxes created a cloud upon the appellant's title to said railroad; that the said taxes had been assessed and entered upon said tax duplicates of said county, under and pursuant to certain proceedings claimed and purporting to have been had before said board of commissioners, and under and in pursuance of its orders entered upon the record of the proceedings of said board, a certified copy of which orders, marked " Exhibit A," was filed with and made a part of said complaint, and under and pursuant to a certain other order of said board, made on the —— day of

June, 1875, as follows : " Ordered, that the auditor be, and he is hereby, ordered and directed to place upon the duplicate for 1875 the taxes voted in Mill township and Fairmount township to aid in the construction of the Cincinnati, Wabash and Michigan Railroad Co., the same being the amount voted less one per cent. levied on the taxable property of 1874, of said township;" and that said taxes were assessed and entered upon said tax duplicate, under and in pursuance of no other or different authority whatever.

The appellant averred and charged, that the proceedings for the levy and collection of said tax, including the order for an election to determine whether such aid should be given, and all matters connected therewith, were defective, illegal and void, for the following, among other, reasons, to wit:

1. The Board of Commissioners of Grant county were not in legal session on the 15th day of April, 1874, when the petition was presented, asking that Mill township might make an appropriation to aid said Cincinnati, Wabash and Michigan Railroad Company in the construction of its railroad through said township, and when the order was made that the polls be opened for the votes of said township on the subject of said appropriation; that the board was not in general session, because the law prescribed another and different time for such general session; that the board was not legally in special session, because no summons had been issued by the auditor or any other officer of Grant county to the sheriff of said county, convening said board on that day, or on any previous day, from which the board had adjourned to that day; that no such notice was served on said board nor on a majority thereof, nor was six days' notice given of said special session, nor was there, in the opinion of the officer calling said board, an emergency requiring a shorter time; and that said pretended special session of said board was un-

authorized by any law of this State then in force, and was absolutely void, and its acts were of no binding force or validity whatever.

2.   That the taxable property in said Mill township, on the tax duplicate of said county for 1873, was $587,305, and no more, and that the sum asked in said petition to be given and ordered to be voted for, and which had been placed on the duplicate for collection, to give aid in the construction of said railroad, was $16,200, which sum exceeded two per cent. upon the taxable property of said township on the tax duplicate of said county, delivered to the county treasurer, for the year preceding such application and order of election, to wit, for the year 1873; for which reason, said order for an election and all subsequent proceedings were absolutely void.

3. The only authority or levies of taxes, made by said board for said purpose, and under which the taxes against the appellant's property for the years 1874 and 1875 have been placed upon the tax duplicate, were as follows: "It is therefore ordered, that a tax of one per cent. be levied and charged on the tax duplicate of said township, including the corporation of Jonesboro, which is within said township, for the year 1874, for the purpose of collecting the sum of $8,100, to so aid said railroad company, provided said levy shall not exceed one per cent. of said year, which is to be charged on said duplicate for 1874, and collected as other taxes; that a like per centum, to wit, one per centum, be so levied and charged on the taxable property of said township, including said town of Jonesboro, for the year 1874, which is to be so charged on said duplicate for 1875, and collected with said taxes of 1875, for the purpose of collecting and paying said remainder of said sum so voted for, to wit, $8,100, which sums are hereby appropriated and ordered to be paid over to said railroad company, in all respects according to the provisions of the

law in such cases made and provided, approved May 12th, 1869, and the several amendments to said law on the subject of voting aid to railroad companies;" and the following order, made on the —— day of June, 1875, to wit: " Ordered, that the auditor be, and he is hereby, ordered to place upon the duplicate for 1875 the taxes voted in Mill township and Fairmount township to aid in the construction of the Cincinnati, Wabash and Michigan Railroad Co., the same being the amount voted less one per cent. levied on the taxable property, of 1874, of said township."

The appellant further said, that the total amount of property entered upon the tax duplicate in Mill township, outside of the corporation of Jonesboro, to be charged with taxes for 1874, was $574,040, and within said corporation, $211,775, making together $785,815 ; and for the year 1875, the property in Mill township, outside the corporation of Jonesboro, amounted to $559,605, and within said corporation it was $200,610, amounting together to $760,215 ; that the levy for 1874 was invalid, *first,* because it was not definite in the amount of the levy, and, *second,* because the amount levied exceeded one per cent. of the taxable property on the duplicate for that year ; that the levy for the year 1875 was invalid, because the amount of the levy was not fixed by the board, but was left to be determined by the auditor.

4.   The levies were invalid, because made upon the property taxable within the corporate limits of the incorporated town of Jonesboro.   The appellant further said, that the total amount of property charged against the appellant, or the Pittsburgh, Cincinnati and St. Louis Railway Company, for the year 1874, was $61,670, and for the year 1875 was $52,866, while the amount of the special tax entered upon the duplicate against said property, for the aforesaid purposes, was $616.70 for 1874, and $581.52 for 1875, which was an excess over one per cent., for 1875, on

the property entered on the tax duplicate as the appellant's property for that year, and the levy for 1875 was, for that reason, illegal and void.

6. The said tax was assessed and levied, and payment thereof was sought to be enforced, to raise money and make a donation thereof to said Cincinnati, Wabash and Michigan Railroad Company, and for no other purpose whatever, and the levy, for that reason, was illegal and void, on the ground that the statute authorizing donations by townships to aid in the construction of railroads was unconstitutional.

Wherefore the appellant prayed, that the said taxes might be declared to be illegal and void, and the appellees, and each of them, might be enjoined from collecting or attempting to collect the same, or any part thereof, etc.

This action was commenced in the circuit court, on the 7th day of November, 1876.; but the amended complaint, the substance of which we have set out, was not filed until the 6th day of February, 1877. Between the time of the commencement of the action, and the time of the filing of said amended complaint, to wit, on the 3d day of February, 1877, an act was passed by the General Assembly of this State, and duly approved, entitled "An act to legalize the official acts of the Board of Commissioners of Grant county, Indiana, done at a special session of said board, held on the 14th and 15th days of April, 1874, in relation to the hearing of petitions praying said board to order elections to be held in the townships of Mill and Fairmount, in said county, for the purpose of voting aid, in favor of the construction of the Cincinnati, Wabash and Michigan Railroad, under an act entitled 'An act to authorize aid to the construction of railroads by counties and townships taking stock therein, and making donations to railroad companies,' approved May 12th, 1869, and the several acts and parts of acts amendatory thereof, since en-

acted, and also to legalize the subsequent proceedings had, and orders made, in pursuance of said elections, at their regular June sessions for the years 1874 and 1875." Acts 1877, Reg. Sess., p. 113.

Two questions are presented for decision in this case, as follows :

1. Under the law of this State, as it existed at the time this suit was commenced, did the appellant's complaint state facts sufficient to constitute a cause of action ?

2. If the first question ought to be, and must be, answered in the affirmative, what effect, if any, should the curative act, above entitled, of February 3d, 1877, have upon the proper decision of this case ?

We will consider and decide these questions, as briefly as we can, in the same order in which we have stated them.

1. It seems to us that the appellant's complaint in this case stated facts sufficient to show a present cause of action, when the suit was commenced. If the facts stated in the complaint were true, and as they were well pleaded the appellees' demurrers admitted their truth, the taxes levied and assessed by the Board of Commissioners of Grant county, upon the appellant's property in Mill township, in said county, to aid the Cincinnati, Wabash and Michigan Railroad Company in the construction of its railroad, were clearly illegal, invalid and void. The proceedings, which led to the levy and assessment of the taxes sought to be enjoined, were evidently intended to be had and held under and pursuant to the provisions of the act of May 12th, 1869, authorizing counties and townships to aid in the construction of railroads. It was indispensably necessary, we think, to the legality of those taxes, that the proceedings in question, in their inception and in every material step subsequently taken, should have conformed strictly to the requirements of the statute.

If it be true, as alleged in the complaint, that the Board of Commissioners of Grant county were not in legal session, when the petition was presented for an appropriation by Mill township to aid in the construction of said railroad, and when the order was made for submitting the question of such appropriation to the votes of the legal voters of said township, it is clear that the proceedings of the board were illegal in their inception, and that the levy and assessment of taxes pursuant thereto were illegal, invalid and void.   For, by the 1st section of said act of May 12th, 1869, it was expressly required that the petition should be presented to, and the order made by, the board of commissioners at a " regular or special session thereof." 1 R. S. 1876, p. 736.

If it be true, as charged in the complaint, that the taxable property of Mill township, on the tax duplicate of Grant county, for 1873, the year preceding the presentation of said petition, was five hundred and eighty-seven thousand three hundred and five dollars, and no more, and that the amount of the appropriation " specified in such petition," and ordered to be voted for and placed on the duplicate for collection, to aid in the construction of said railroad, was sixteen thousand two hundred dollars, it can not be questioned, we think, that these fundamental proceedings were wholly unauthorized by law, were in excess of the powers conferred by the statute, and that the levy and assessment of taxes pursuant thereto were illegal, invalid and void.   For, by the terms of the statute, the amount of the appropriation must be specified in the petition, and must not exceed " two per centum upon the amount of the taxable property of such township."   Under the averments of the appellant's complaint, the amount of the appropriation, specified in the petition, and ordered to be voted for and placed upon the duplicate for collection, was nearer three per centum than two per centum of

the alleged taxable property of said Mill township. *The Detroit, etc., R. R. Co.* v. *Bearss*, 39 Ind. 598.

But we need not pursue this question; for it is clear, beyond a peradventure, that the facts stated in the complaint were sufficient to show, that the taxes assessed upon the appellant's property, to aid in the construction of said railroad through Mill township, were illegal, invalid and absolutely void.

The point is made in argument by the appellees' counsel, that, under the allegations of the complaint, the Pittsburgh, Cincinnati and St. Louis Railroad Company was the only party plaintiff in this action. Perhaps, under the same proper averments, the Pittsburgh, Cincinnati and St. Louis Railroad Company might have maintained a similar action, for the same purpose, though that is a question we need not and do not decide; but, as the appellant was the owner of the property on which the taxes were assessed and were a lien, and as, under the agreement set out in the complaint, the taxes legally assessed, and paid by the P., C. & St. L. R. R. Co., were a proper charge against the appellant, we are clearly of the opinion, that this action was properly brought in the name of the appellant.

2. We pass now to the consideration of the second question above stated, namely, What effect, if any, did the curative act of February 3d, 1877, have upon the taxes described in the complaint, the collection of which taxes the appellant sought to enjoin in and by this action? This is the important and controlling question in this case. We have already given the title of the act referred to, and we find it necessary to the proper presentation of the question to be considered, that we should set out also the act itself. The act and its preamble read as follows:

" Whereas, it appears that the auditor of Grant county, Indiana, issued a summons to the commissioners of said county, on the 14th day of April, 1874, to meet in special session on said day; and,

" Whereas, it appears that said board met in pursuance to said summons, but that the record of said board does not show that they so met, on the summons of said auditor; and,

" Whereas, it appears that said board adjourned on said day, to meet on the following day, the same being the 15th day of April, 1874, which fact is not shown by the record; and,

" Whereas, it appears that said board met on the 15th day of April, 1874, in pursuance to said adjournment, which is not shown by their record; and,

" Whereas, it appears that on said 14th and 15th days of April, 1874, while so in special session, said board heard petitions praying them to order elections to be held in the townships of Mill and Fairmount, in said Grant county, to vote aid to the construction of the Cincinnati, Wabash and Michigan Railroad, and in accordance with the prayers of said petitioners, ordered said elections to be so held; and,

" Whereas, it appears that at the regular June session, 1874, of said board, they made orders levying a tax of one per cent. upon the taxables of said townships, in pursuance of said elections, the same being one-half of the amount so voted, in which orders appear the following words, to wit: 'Provided said levy shall not exceed one per cent. of said year,' and which words were not intended to be a part of said orders; and,

" Whereas, it appears that at the regular June session 1875, of said board, they made an order levying the remainder of the taxes so voted, less one per cent. levied on the taxable property of 1874, of said townships; and,

" Whereas, it has been represented to the General Assembly that the irregularities in the proceedings, orders, and records of said board of commissioners, in relation to said railroad tax, will likely produce lawsuits for the recov-

ery of the tax collected on said levies, and thereby cause irreparable injury to the interests of said county, therefore,

" SECTION 1.   *Be it enacted by the General Assembly of the State of Indiana,* That all orders made and proceedings had by said Board of Commissioners of said Grant county, of and concerning the elections held for voting aid to the construction of the Cincinnati, Wabash and Michigan Railroad, in said Mill and Fairmount townships, and all orders and proceedings, by said board, concerning the levying of the taxes voted at said elections, whether at a special or regular session, be and the same are hereby legalized and rendered valid, as though said board had been regularly summoned to meet in special session, and the orders and records properly entered and made in accordance with law.

"SEC. 2.   As an emergency exists requiring the immediate taking effect of this act, therefore the same shall be in force from and after its passage."

It is claimed by the appellant's counsel, that this legalizing or curative statute is unconstitutional and void; and this is the question we must meet and decide.   We are very loth, as a rule, to question the constitutionality of a statute, which has been deliberately enacted by the General Assembly, and has obtained the sanction of executive approval. We do not question, but we recognize with pleasure, the ability, the intelligence, the learning and the faithfulness to duty of the distinguished citizens who are chosen by the people, from time to time, to fill the legislative and executive departments of our State government.   They, like the judges of our courts, are bound by their official oaths to support the constitution of the State.   In the third article of that constitution, it is provided as follows:

" SECTION 1.   The powers of the government are divided into three separate departments : the legislative, the executive, including the administrative, and the judicial ; and no person, charged with official duties under one of these de-

partments, shall exercise any of the functions of another, except as in this constitution expressly provided."

It is very clear, we think, that, in the enactment and approval of the statute now under consideration, the legislative and executive departments of our State government have exercised, or attempted to exercise, judicial functions. The forms and rules which usually control judicial proceedings were not observed in the passage of said act. In the absence of, and we may assume without notice to, the parties, individual and corporate, whose rights of property were to be seriously affected, if not concluded, by the proposed legislation, without issue joined, without evidence heard, and without a hearing awarded to them and their counsel, the General Assembly made a special finding, in and by the preamble of the act above quoted, of the truth of certain disputed and controverted matters of fact, and, upon such finding, adjudged and declared in the body of the act, that all orders made and proceedings had by the Board of Commissioners of Grant county, of and concerning the elections for voting aid to the construction of the Cincinnati, Wabash and Michigan Railroad, in Mill and Fairmount townships, and of and concerning the levying of the taxes voted at said elections, were thereby legalized and rendered valid.

No one can doubt, as it seems to us, that the Legislature, in the passage of this preamble and statute, invaded, held and exercised the functions of the judicial department of our State government, and that, for this reason, the act above quoted must be held to be unconstitutional and void. The powers of the General Assembly are almost unlimited; but they can not, as a rule, try and determine the rights of parties to a pending lawsuit.

We have said that the proceedings of the Board of Commissioners of Grant county, in relation to the appropriation by Mill township to aid in the construction of the Cincinnati, Wabash and Michigan Railroad, and the levy

and assessment of taxes pursuant thereto, were illegal, invalid and absolutely void. This question presents itself for decision : Was it within the power of the General Assembly, in and by the act above quoted, to legalize and render valid the illegal, invalid and void proceedings of the Board of Commissioners of Grant county ? We are clearly of the opinion that this question must be answered in the negative.

The case of *McDaniel* v. *Correll*, 19 Ill. 226, is in point. In that case it appeared that a statute had been enacted to make valid certain illegal proceedings, by which an alleged will was adjudged void, and which were had against non-resident defendants, over whom the court had obtained no jurisdiction. On appeal, the Supreme Court of Illinois said : " If it was competent for the Legislature to make a void proceeding valid, then it has been done in this case. Upon this question we can not for a moment doubt or hesitate. They can no more impart a binding efficacy to a void proceeding, than they can take one man's property from him and give it to another. Indeed, to do the one is to accomplish the other."

In the case of *Denny* v. *Mattoon*, 2 Allen, 361, in discussing the validity of a legalizing or curative statute, it was said by the Supreme Court of Massachusetts, BIGE-LOW, C. J., delivering the opinion :

" The wise and salutary provision in our constitution, by which its framers sought to declare the distribution of the different powers of the government and to keep them separate and distinct, is not a mere abstract truth. It is capable of a practical application, by which each department may be made to operate within its own appropriate sphere, so as to accomplish the great end of securing a government of laws and not of men. Although it may be difficult, if not impossible, to lay down any general rule which may serve to determine, in all cases, whether

the limits of constitutional restraint are overstepped by the exercise by one branch of the government of powers exclusively delegated to another, it certainly is practicable to apply to each case, as it arises, some test by which to ascertain whether this fundamental principle is violated. If, for example, the practical operation of a statute is to determine adversary suits pending between party and party, by substituting in the place of the well settled rules of law the arbitrary will of the Legislature, and thereby controlling the action of the tribunal before which the suits are pending, no one can doubt that it would be an unauthorized act of legislation, because it directly infringes on the peculiar and appropriate functions of the judiciary. It is the exclusive province of courts of justice to apply established principles to cases within their jurisdiction, and to enforce their decisions by rendering judgments and executing them by suitable process. The Legislature have no power to interfere with this jurisdiction in such manner as to change the decision of cases pending before courts, or to impair or set aside their judgments, or take cases out of the settled course of judicial proceeding."

See, also, on this subject, *Ervine's Appeal*, 16 Pa. State, 256, 268; *Richards* v. *Rote*, 68 Pa. State, 248; Cooley Const. Lim., 3d ed., p. 106, *et seq.*, and foot notes.

The case at bar is very similar to the example given by Chief Justice BIGELOW, in the above quotation from his opinion. The record shows, that, on the 29th day of November, 1876, the court below overruled the appellees' demurrer to the appellant's complaint. After the passage of the curative statute above quoted, the court sustained the appellees' demurrer to the appellant's complaint. Here we have "the arbitrary will of the Legislature" controlling the action of the court before which this suit was pending. We do not doubt, that the curative statute above quoted was an unauthorized act of legislation, because it was a direct

infringement on the peculiar and appropriate functions of the judicial department of our State government; and therefore we hold that the statute in question was and is unconstitutional and void.

For the reasons given, we think that the circuit court erred in sustaining the appellees' demurrer to the appellant's complaint.

In what we have said, we do not question the power of the Legislature to enact general laws, regulating the practice in courts of justice, which may materially affect or change the decision of causes pending before the courts. But it seems to us, that it is not within the power of the Legislature, by a special act, directed to a particular case then pending before the courts, to change the decision of that case. Special legislation on such subject is prohibited by sections 22 and 23 of the fourth article of the constitution of this State.

The judgment is reversed, at the appellees' costs, and the cause is remanded, with instructions to overrule the appellees' demurrer to the appellant's complaint, and for further proceedings in accordance with this opinion.

Opinion filed at November Term, 1878.
Petition for a rehearing overruled at May Term, 1879.