Lola BAILEY, Petitioner/Appellant,

v.

Kenneth MENZIE and Linda Menzie, Respondents/Appellees.

No. 92A03–8607–CV–206.

Court of Appeals of Indiana,
Third District.

March 23, 1987.

David C. Kolbe, Warsaw, for petitioner/appellant.

Mark E. Wagner, Kizer, Neu, Joyce, Wyland, Humphrey, Wagner & Gifford, Bremen, for respondents/appellees.

STATON, Judge.

Lola Bailey appeals the trial court's dismissal of her petition for grandparent visitation, raising one issue:

> Does Ind.Code 31–1–11.7–2(d), providing that grandparent visitation rights survive the adoption of the child by a stepparent, apply to preserve such rights for the grandparents of children adopted before the subsection was added?

We affirm.

Although we recognize that whenever a family matter is brought before a court of law, more may be involved than the legally relevant facts disclose, we limit our recitation to just those facts. Kenneth Menzie was married to Lola Bailey's daughter, Barbara, and a daughter, Amy, was born to them. Barbara Menzie died in February, 1975, when Amy was two years old. In October, 1978, Kenneth Menzie married Linda Menzie.

In 1981, the Indiana Legislature passed the Indiana Grandparent's Visitation Statute, IC 31–1–11.7, which provided, in part: "A child's maternal or paternal grandparent may seek visitation rights if: (1) the child's father or mother is deceased...." Acts 1981, P.L. 265, § 1, codified at IC 31–1–11.7–2(1).[1] In May of 1982, Lola Bailey petitioned for visitation under this statute, and in November 1982, after a determination that it was in Amy's best interests, the trial court granted Bailey's petition.

Shortly after Bailey was granted visitation rights, Linda Menzie petitioned for and was granted adoption of Amy. The Menzies thereafter filed a petition for modification and termination of the visitation order, and Bailey filed a verified information in contempt based upon Kenneth Menzie's refusal to comply with the visitation order. The trial court denied the Menzie's petition and found Kenneth Menzie in contempt. On appeal, however, this Court reversed on the ground that Linda Menzie's adoption of Amy cut off Lola Bailey's visitation rights under the Grandparent's Visitation Statute. *In re Visitation of Menzie* (1984), Ind. App., 469 N.E.2d 1225.[2] We reasoned that relevant portions of Indiana's adoption statute placed a child's adoptive mother in the position of the natural or biological mother, and severed all legal ties between the adopted child and the natural mother and her family. *Id.* at 1227. *See also* IC 31–3–1–9. Thus, Linda Menzie became Amy's mother, and since she was not deceased, the conditions precedent to Lola Bailey's right to visitation under IC 31–1–

---

**1.** The statute was amended in 1983 to read as follows: "A child's maternal grandparent may seek visitation rights if: (1) the child's mother is deceased."

**2.** Lola Bailey's petition for transfer was untimely filed, and was denied by the Supreme Court.

11.7–1 no longer existed. *Menzie, supra,* 469 N.E.2d 1227.

Our opinion in this previous appeal was handed down October 31, 1984. In April of the following year, the legislature approved the addition of subsection (d), which took effect September 1, 1985. P.L. 281–1985, § 1. The subsection provides that "[v]isitation rights provided for in [the statute] survive the adoption of the child by a stepparent." On October 31, 1985, Lola Bailey again petitioned for visitation of her granddaughter, Amy Menzie. The trial court dismissed her petition, citing our opinion in *Menzie,* and Bailey appeals, arguing that the legislature's addition of subsection (d) to the Grandparent's Visitation Statute was merely a "clarification" of the original statute. In the alternative, she argues that the added subsection should be applied retroactively to comply with the legislature's intent. We will address each of these arguments.

## I.

### *Clarification*

Lola Bailey argues that when the legislature added subsection (d) to the Grandparent's Visitation Statute, it was merely "clarifying" and not changing or adding to the statute. She argues that we should view the added subsection as evidence of legislative intent in adopting the original statute, and that we should give effect to this intent in interpreting and applying the statute.

■ One inference that may be drawn from an amendment adding a provision to a statute is that, in the view of the legislature, the statute as originally drafted did not contain the provision. *Deutschman v. Charlestown* (1872), 40 Ind. 449, 450, *Bettenbrock v. Miller* (1916), 185 Ind. 600, 606, 112 N.E. 771. On the other hand, our Supreme Court has recognized that, when a statute is ambiguous, we may look to subsequent amendments for evidence of the legislature's initial intent. *Seymour Nat'l Bank v. State* (1981), Ind., 422 N.E.2d 1223, 1226, *modified,* 428 N.E.2d 203; *Bettenbrock, supra,* 185 Ind. at 605, 112 N.E.

771. The amendment may be an attempt not to add a provision which was previously lacking, but to clarify that the provision is, in fact, a part of the statute.

■ Even in the latter case, however, we must bear in mind that the intent we are searching for is that of the legislature that passed the original statute, not that of any subsequent legislature. *Bettenbrock, supra,* 185 Ind. at 606, 112 N.E. 771. To the extent that the amendment merely represents the opinion of the amending legislature as to how the statute should be construed, it is not controlling. Construction of doubtful statutes is a judicial function, which the courts alone must perform. *Id.* at 607, 112 N.E. 771.

■ In our search for the intent of the original legislature, we must be very careful concerning the weight we give to various types of evidence. Later acts of a legislature provide "a highly unreliable basis for making a secondary inference respecting the original legislative intent." R. Dickerson, *The Interpretation and Application of Statutes* 179 (1975). The best evidence of legislative intent is the statute itself, "for that is the expression of the legislative will." *Bettenbrock, supra,* 185 Ind. at 606, 112 N.E. 771. *See also* R. Dickerson, *supra,* at 82–83. More important, our constitution provides that "no law shall be enacted, except by bill," Ind. Const. Art. IV, § 1, and we must be very careful not to give the force of law to mere evidence of unenacted intent. R. Dickerson, *supra,* at 83.

■ The Grandparent's Visitation Statute, as originally enacted, was silent as to whether the visitation rights it created survived the adoption of the child by a stepparent. As the original statute read, in conjunction with the adoption statute at IC 31–3–1–9, once the child was adopted, the visitation statute no longer applied. Because Linda Menzie became Amy's mother through adoption, taking the place of Amy's natural mother, Amy's mother was no longer deceased, and the conditions precedent to Lola Bailey's visitation rights under the statute no longer existed. *In re Visitation of Menzie* (1984), Ind.App., 469

N.E.2d 1225, 1227; *Lipginski v. Lipginski* (1985), Ind.App., 476 N.E.2d 924. We do not read from the legislature's silence an intent to frustrate the effect of or partially repeal the adoption statute, or to extend visitation rights to an individual who no longer bears any legally recognized relation to the child.

We have twice held that under the original statute visitation rights do not survive adoption by a stepparent. *Menzie, supra; Lipginski, supra.* The legislature's subsequent addition of subsection (d) to the statute does not persuade us that this interpretation was incorrect.

## II.

### *Retroactive Application*

Lola Bailey argues that even if we do not view subsection (d) as a clarification of the original Grandparent's Visitation Statute, we should apply it retroactively in order to preserve her visitation rights.

■ Ordinarily an amendatory act is applied prospectively, rather than retroactively, unless the legislature has expressly provided for retroactive operation. *McGill v. Muddy Fork of Silver Creek Watershed Conservancy District* (1977), 175 Ind.App. 48, 370 N.E.2d 365, 370; *Malone v. Conner* (1963), 135 Ind.App. 167, 189 N.E.2d 590, 591. There are circumstances, however, in which retroactive application may be appropriate. "Where no new rights are given or existing rights taken away, and the new legislation only provides a new remedy for the enforcement of an existing right, retroactive operation may be given [if] necessary to carry out the purpose of the new law." *McGill, supra,* 370 N.E.2d at 370.

■ Bailey argues that subsection (d) does not give her a new right or substantially impinge upon Linda Menzie's rights as an adoptive mother, but we cannot agree. Under Indiana's adoption statute, at IC 31–3–1–9, the adoptive parent takes the position of the natural parent. This Court has stated that: "a decree of adoption severs forever every part of the parent and child relationship; severs the child entirely from its own family tree and en-

grafts it upon that of another." *Menzie, supra,* 469 N.E.2d at 1227, *quoting In re Adoption of Thomas* (1982), Ind.App., 431 N.E.2d 506, 513. As we discussed above, subsection (d) extends visitation rights to grandparents even after their legal ties to the child have been severed.

Conversely, the added subsection impinges upon the rights of adoptive stepparents. While the adoption statute purports to place adoptive parents in the position of the natural parent, subsection (d) of the Grandparent's Visitation Statute allows for adoptive stepparents to be treated differently. Generally, parents have a right to determine who can see their children. Under subsection (d), however, adoptive stepparents can prohibit their own parents from seeing a child, and together with their spouse they can keep the spouse's parents from seeing the child, but they may be forced by court order to allow the parents of the parent in whose place they now stand to visit the child.

■ Subsection (d) is not a mere remedial amendment providing a means of enforcing an existing right; it gives rights to grandparents who would not otherwise have them, and it takes away from adoptive stepparents rights which are given to them through the adoption statute at IC 31–3–1–9. Nonetheless, Bailey argues that retroactive application is still appropriate. There is some authority for the proposition that a statute may also be given retroactive effect, even though it may give or take away rights, if such effect is necessary to carry out the purpose of the law. *See Joseph Schlitz Brewing Co. v. Central Beverage Co., Inc.* (1977), 172 Ind.App. 81, 359 N.E.2d 566, 576; *Pathman Constr. Co. v. Knox County Hosp. Ass'n* (1975), 164 Ind.App. 121, 326 N.E.2d 844, 848. Even assuming arguendo that retroactive application is appropriate in such circumstances, they do not exist here. Retroactive application is not necessary in order to carry out the purpose of subsection (d); it is necessary only to extend visitation rights to Lola Bailey. Prospective application is sufficient to carry out the purpose of the statute, as it is for most legislation.

■ Because we find that IC 31–1–11.7–2(d) does not apply to preserve the visitation rights of grandparents whose grandchildren were adopted before the subsection was added, we affirm the judgment of the trial court.

SHIELDS, P.J., concurs.

HOFFMAN, J., concurs in result with opinion.

HOFFMAN, Judge, concurring in result.

I concur in result.

I base my affirmance on the reasoning set out in *State ex rel. M.T.A. v. Ind. Rev. Bd.* (1969), 144 Ind.App. 63, 87–88, 253 N.E.2d 725, 731:

"Plaintiff, Mass Transportation Authority of Marion County, Indiana, obtained, in this court, a judgment. Such judgment was entered of record on December 31, 1968. The effect of that judgment was to settle the respective interests of the parties to the suit. Subsequently, the General Assembly passed House Enrolled Act No. 1115 (Acts 1969, ch. 20), which we have just held was a legitimate exercise of legislative power. However, the application of House Enrolled Act No. 1115 with respect to the judgment in favor of the Mass Transportation Authority of Marion County, was invalid. *See: The C., C. & I.C.R.W. Co. v. Board of Comm'rs. of Grant Co., et al., [65 Ind. 427 (1879)] supra; Searcy v. Patriot & Barkworks Turnpike Co. [79 Ind. 274 (1881)], supra.*

To hold, as defendants urge, that the Act (House Enrolled Act No. 1115) prevailed in its application as to the judgment in favor of Mass Transportation Authority of Marion County would deprive the Mass Transportation Authority of its judgment by legislative action. The General Assembly cannot interfere with a judicial determination. Article 3, § 1, of the Constitution of the State of Indiana. Without a doubt, the General Assembly had every right to give prospective and retroactive effect to their legislation, with the exceptions heretofore pointed out. However, the attempt to encroach upon the determination of a co-equal branch of government was an unwarranted and unconstitutional action by the General Assembly, and its application to the judgment of this court has no force and effect. It should be abundantly clear that this court has no intention of sacrificing that which the Constitution of this State guarantees to the judicial branch of government."

and the cases cited therein.

Also, *Prog. Imp. Assoc. v. Catch All Corp.* (1970), 254 Ind. 121, 126, 258 N.E.2d 403, 405:

"The judicial sanction, once granted, would continue to bolster the improvement in its new and final form, but the court would be cut off from further control over the proceedings at which the plans, specifications and estimates of cost became finalized. Such interference impairs the control of the courts over their own judgments and deprives those judgment of their conclusiveness. *State ex rel. Hovey v. Noble* (1888), 118 Ind. 350, 21 N.E. 244. This the Legislature cannot constitutionally do either directly or indirectly." (Citations omitted.)