Lola BAILEY, Petitioner–Appellant,

v.

Linda MENZIE and Kenneth Menzie,
Respondents–Appellees.

No. 20A03–8806–CV–195.

Court of Appeals of Indiana,
Third District.

Aug. 24, 1989.

David C. Kolbe, Warsaw, for petitioner-appellant.

Mark E. Wagner, Kizer & Neu, Bremen, for respondents-appellees.

GARRARD, Presiding Judge.

Lola Bailey (Bailey) has now been before this court three times in her pursuit of visitation rights with a former granddaughter, Amy Menzie. Bailey's latest petition for visitation rights having been dismissed by the trial court, she brings this appeal. We reverse.

Barbara and Ken Menzie were the natural parents of a daughter, Amy, who was born in 1973. Barbara died in 1975 and in 1978 Ken married his present wife, Linda. Barbara's mother, Bailey, pursuant to the then newly enacted Grandparent's Visitation Act, IC 31–1–11.7–1 *et seq.* ("Act"), petitioned for and was granted such rights in November of 1982. Apparently in response to the visitation order, Linda Menzie

soon petitioned to adopt Amy. The court granted that petition and entered a decree of adoption in February of 1983.

Before year's end the parties' relationship had collapsed and the Menzies moved the court for modification or termination of Bailey's visitation rights. Bailey countered with a verified motion for contempt on the grounds that the Menzies were not respecting her visitation rights under the November 1982 order. After denying the Menzies' motion, the trial court entered a contempt citation and ordered that visitation recommence. The Menzies appealed and this court reversed on the grounds that the adoption decree severed Amy from the Bailey family tree. Bailey had no rights under the Act because she was no longer Amy's grandmother. *In re Visitation of Menzie* (1984), Ind.App., 469 N.E.2d 1225.

An amendment to the statute set the stage for round two. The Legislature added subsection (d) which provided that a grandparent's visitation rights survive the adoption of the child by a stepparent. Acts 1985, P.L. 281 § 1. Bailey's petition under the statute as amended was dismissed. On appeal this court affirmed holding that the new subsection was an amendment rather than a clarification and, accordingly, was to be applied only prospectively. *Bailey v. Menzie* (1987), Ind.App., 505 N.E.2d 126. Sans retrospective application, Bailey was left without visitation rights despite the fact that implicit in the November 1982 visitation order was a finding that Bailey's influence on Amy was in the child's best interest. *See* IC 31–1–11.7–3.

Yet another amendment to the statute has set the stage for this third appeal. Following the second *Menzie* decision, the Legislature declared that "IC 31–1–11.7–2 applies to visitation rights of grandparents who have been granted visitation rights before September 1, 1985." Acts 1987, P.L. 293 § 7. Bailey again petitioned for visitation, but the trial court dismissed her petition in reliance upon the following passage from our 1987 decision: "Even assuming arguendo that retroactive application is appropriate in such circumstances, they do not exist here." *Bailey v. Menzie*, 505 N.E.2d at 129.

## ISSUE

The issue presented in this appeal is whether or not the 1987 amendment can be applied to Bailey consistently with constitutional requirements that the powers of government be exercised by three equal departments. Indiana Constitution, art. 3, § 1.

## DISCUSSION AND DECISION

Just as it is imperative in the context of statutory construction to acknowledge what a statute addresses and what it does not, *Bonge v. Risinger* (1987), Ind.App., 511 N.E.2d 1082, a recognition of what this court has and has not held is indispensable to an understanding of this decision. All that this court's 1984 ruling held was that the Bailey fact pattern did not meet the conditions precedent for a proper application of the Grandparent's Visitation Act. *In re Visitation of Menzie, supra,* 469 N.E.2d at 1227. Under the terms of that Act and the adoption statute, Linda is now Amy's mother, IC 31–3–1–9, and, of course, Linda's mother, not Lola Bailey, is Amy's maternal grandmother because she is "the parent of the child's adoptive parent...." IC 31–1–11.7–1(2). Bailey's visitation rights under the November 1982 order were premised upon her wielding rights granted under the Grandparent's Visitation Act, but following Amy's adoption the act no longer applied. *See also Lipginski v. Lipginski* (1985), Ind.App., 476 N.E.2d 924.

Similarly, our conclusions in the 1987 *Menzie* decision are not inconsistent with what we decide today. We held then that subsection (d) as appended to the Act was an amendment rather than a clarification and as such warranted only prospective application. *Bailey v. Menzie, supra,* 505 N.E.2d at 128–29. That one sentence from our 1987 decision which is offered as the basis of the trial court's dismissal of Bailey's latest petition is taken out of context. Therein Judge Staton was, with some skepticism, discussing the circumstances under which retroactive application of a statutory

amendment is necessary despite the Legislature's failure to so provide. *Bailey v. Menzie, supra,* 505 N.E.2d at 129. *Cf. State ex rel. Uzelac v. Lake Criminal Ct.* (1965), 247 Ind. 87, 93, 212 N.E.2d 21, 24. ("A statute will be interpreted as having a retroactive effect only where the legislative intent is clear or the language imperatively requires it.") Judge Staton noted that it is at least arguable that retroactive application should be ordered where essential to serve the law's purpose. He, nonetheless, concluded that this was not necessary to carry out the purposes of subsection (d); it was necessary only to restore visitation rights to Bailey. *Bailey v. Menzie, supra,* 505 N.E.2d at 129. For the purpose of today's analysis it is important to note that both prior cases thus dealt with the vitality of the visitation order entered in November, 1982. With the passage of Acts 1987, P.L. 293 § 7, the Legislature appears to have declared Bailey and others similarly situated eligible to petition for visitation rights.

Judge Hoffman's concern in his concurrence to our 1987 decision should not deprive Bailey of her hearing. Judge Hoffman expressed concern that the Legislature's amendments, if applied retrospectively, would impermissibly " 'interfere with a judicial determination.' *State ex rel Mass. Transp. Auth. v. Indiana Rev. Bd.* (1969), 144 Ind.App. 63, 87–88, 253 N.E.2d 725, 731, (en banc)." *Bailey v. Menzie, supra,* 505 N.E.2d at 130 (Hoffman, J. concurring). The series [1] of opinions by this court and the Indiana Supreme Court in the *M.T.A.* dispute concluded, among other things, that where a court of competent jurisdiction renders a decision in a dispute before it, no sequent legislative maneuvers can deprive the judgment holder of its judgment. *Id. Cf. Searcy v. The Patriot and Barkworks Turnpike Co.* (1881), 79 Ind. 274. To allow the Legislature to act otherwise would violate the separation of powers provisions of the Indiana Constitution and leave the judiciary impotent. Indiana Constitution, art. 3 § 1. *State ex*

*rel Hovey v. Noble* (1888), 118 Ind. 350, 370, 21 N.E. 244, 251–52. ("The duty of maintaining the separation of the departments of the government and the integrity and existence of the courts as established and organized by the Constitution is one of the most important that the judiciary is required to perform.") Here the Legislature's enactments were legitimate responses to our previous rulings and because a proper reading of our prior decisions reveals no conflict with these amendments, they will be given full effect.

Where possible we will embrace an interpretation that renders a statute, or amendment thereto, constitutional. *Willis v. State* (1986), Ind.App., 492 N.E.2d 45. Thus we must endeavor to construe Acts 1987, P.L. 293 § 7 so as not to render it "obnoxious to constitutional prohibitions." *State v. Rice* (1956), 235 Ind. 423, 134 N.E.2d 219. While *M.T.A.* dealt with the issue of when the Legislature would be permitted to retroactively repeal legislation, those same concerns arise in the context of the General Assembly's attempt to enact retroactively effective legislation: "The General Assembly shall not violate a constitutional guarantee" and "shall not impair vested rights." 253 N.E.2d at 730. The Menzies have not pointed to explicit constitutional guarantees which would be contravened by application of the statute to the case at bar. On the other hand, the vested right debate is not so summarily concluded, especially when the question is raised in conjunction with the separation of departments challenge.

The Legislature has obviously chosen to alter its course in family law. No longer can we employ, as we were once so fond of doing, that botanical analogy between the consequences of an adoption and tree surgery to the effect that "a decree of adoption severs the child from its own family tree and engrafts it upon that of another." *In re Adoption of Bryant v. Kurtz* (1963), 134 Ind.App. 480, 487–88, 189 N.E.2d 593, 597; *Bristow v. Konopka* (1975), 166 Ind.

---

**1.** (1969), 144 Ind.App. 63, 242 N.E.2d 642; (1969), 251 Ind. 607, 244 N.E.2d 111; (1969), 144 Ind.App. 63, 253 N.E.2d 725 (in banc).

App. 357, 361, 336 N.E.2d 397, 400; *Matter of Adoption of Thomas* (1982), Ind.App., 431 N.E.2d 506, 513; *In re Visitation of Menzie, supra*, 469 N.E.2d at 1227; *Lipginski v. Lipginski, supra*, 476 N.E.2d at 927.

Before the grandparent's visitation statute was enacted, the General Assembly worked to effect such a severance on several fronts including the adoption statute, IC 31-3-1-9, the intestacy statute, IC 29-1-2-8, and in the probate code, IC 29-1-6-1(d). Seemingly, the Legislature has recognized a difference between an adoption in the traditional sense of a wholly new family unit and adoption where the new family unit contains a natural parent and a former stepparent. In the former it is imperative that most all ties be dissolved while in the latter case the Act accepts implicitly the position that certain biological ties are worthy of respect. That is, as we recognized even before the Legislature provided a formal procedure, in the proper circumstances, grandparental influence upon a former grandchild through visitation rights can be a precious component of successful child rearing. *Krieg v. Glassburn* (1981), Ind. App., 419 N.E.2d 1015. *Cf.* Grandparent Visitation Rights—Social Policies and Legal Rights, 87 *W.Va.L.Rev.* 295, 333.

Turning now directly to the particular amendment under scrutiny in this appeal, it states that "IC 31-1-11.7-2 applies to the visitation rights of grandparents *who have been granted* visitation rights before September 1, 1985." (emphasis added) Acts 1987 P.L. 293 § 7. The question before us is whether or not the Legislature's choice of the words "who have been granted" was a fatal error in either of two related respects. First, does this choice of words signal an impermissible intent to "interfere with judicial determinations." *M.T.A., supra*, 144 Ind.App. at 88, 253 N.E.2d at 731. Or, secondly, does this choice of words impair vested rights?

■ Giving effect to this amended statute as now urged will not vitiate our prior rulings both because those holdings, as discussed above, do not conflict with our decision today and because, in a broader sense, a careful reading of the statute frees it of constitutional difficulties. We observe that, by its own terms, the amendment only addresses IC 31-1-11.7-2. Section 2 is the section which grants certain grandparents the right to petition for visitation. All that the amendment does is permit persons who have been granted visitation rights prior to September 1, 1985 to re-petition under the amended statute. September 1, 1985 is the effective date of subsection 2(d) of the Act wherein the General Assembly made this fundamental change in the effect of an adoption decree with respect to the rights of former grandparents not being cut off by an adoption. Acts 1985, P.L. 281 § 1.[2]

A fair construction of the relief sought in Bailey's petition is that it is a plea, not for the revival of her rights under the November 1982 visitation order, but for a hearing on the merits of her interest in having a right to visit with Amy. (R. 5) Such a hearing will not deprive the Menzies of their judgment, even if it may ultimately deprive them of a consequence which arose from having that judgment. All that our prior rulings held was that Bailey's 1982 visitation order did not survive the adoption of Amy by her former stepmother.

■ Finally, we must consider whether or not retroactive application of the statute will impair vested rights. Once again the Menzies have seized upon a single sentence in our 1987 decision. They assert that the Grandparent's Visitation Act "gives rights to grandparents who would not otherwise have them, and it takes away from adoptive stepparents rights which are given to them through the adoption statute." *Bailey v. Menzie, supra*, 505 N.E.2d at 129. Does an adoption decree create in the stepparent and his or her spouse a vested

---

**2.** We leave unanswered at this time the question not raised by Bailey as to whether or not a former grandparent's right to petition for visitation under the Act is preserved where the grandparent had not acted to perfect such right either

prior to a stepparent's adoption petition or as an intervenor in that proceeding. That determination must be based on a properly presented query regarding the relationship between IC 31-1-11.7-1 and IC 31-1-11.7-2(d).

right? Not in the sense argued by Menzies. A right is vested when:

> ... the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. *The right must be absolute, complete and unconditional,* independent of a contingency, and a mere expectancy of future benefit or contingent interest in property ... does not constitute a vested right.

(emphasis added) *Rico v. Van Gundy* (La. Ct.App.1984), 461 So.2d 458, 461. *See also State ex rel. Milligan v. Ritter's Estate* (1943), 46 N.E.2d 736, 743 ("To be vested, in its accurate legal sense, a right must be complete and consummated.... It must be fixed or established and no longer open to doubt or controversy. *Black's Law Dictionary* 1402 (5th ed. 1979).")

Certainly, an adoption decree vests in the adoptive parent all rights of a natural parent IC 31-3-1-9, but these rights are not "vested rights" as defined in this context because parents' rights, with respect to their children, are not absolute.[3] As our Supreme Court held in a similar context: "The rights of parents are not absolute. They must yield to the welfare of the child." *Gilchrist v. Gilchrist* (1947), 225 Ind. 367, 372, 75 N.E.2d 417, 419. Indeed, this proposition has been recognized by the courts of this state for well over one hundred years and was eloquently stated by Justice Frazier in 1870 when he wrote:

> The duties and authority pertaining to the relation of parent and child have their foundations in nature, it is true. Nevertheless, all civilized governments have regarded this relation as falling within the legitimate scope of legislative control. Except in countries which lie in barbarism, the *authority of the parent over the child is nowhere left absolutely*

*without ... definition and regulation.* (emphasis added)

*State v. Clottu* (1870), 33 Ind. 409, 411. *See generally,* Developments in the Law— The Constitution and the Family, 93 *Harv. L.Rev.* 1156 (1980).

If we were to take the view that the amendment impaired Menzies' vested rights as parents, we would logically be required to declare the entire act constitutionally deficient or inapplicable in the case of any child who had been born (or perhaps existed as a viable fetus or who had simply been conceived) prior to the effective date of the Act. Arguably that view would also extend to all child welfare legislation. The constitution imposes no such restriction upon the legislature.

◼ In so saying, we are fully cognizant of parents' well settled right under the Fourteenth Amendment to raise their families generally as they see fit. *See Santosky v. Kramer* (1982), 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599; *Prince v. State of Massachusetts* (1944), 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645; *Pierce v. Society of Sisters* (1925), 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070; *Meyer v. State of Nebraska* (1923), 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042. It was in this light that Iowa's Supreme Court, in discussing that state's grandparent's visitation statute, stated that "the parenting right is a fundamental liberty interest that is protected against unwarranted state intrusion." *Olds v. Olds* (Iowa 1984), 356 N.W.2d 571.

However, while assessing a similar statute, New York's highest court noted that:

> '[T]he family itself is not beyond regulation in the public interest.... And ... rights of parenthood are [not] beyond limitation' (*Prince v. Massachusetts*, 321 U.S. at p. 166, 64 S.Ct. at 442, *supra*). In determining whether a State's interference with the family relationship is

---

**3.** As one notable commentator has suggested regarding cases that restrictively construe grandparent visitation statutes on constitutional grounds:

> [They] provide ... [a] graphic illustration, if any is needed, of the distortions and unreality resulting when notions of constitutional 'rights' are injected into custody disputes.

> The parents, the child, and perhaps the grandparents all have interests in these cases, but it is quite unrealistic to translate these interests into constitutional 'rights' having uncertain origins and vague outlines.

2 Clark, *The Law of Domestic Relations in the United States* (2nd ed. 1987), § 20.7 p. 538.

proper, the action will not be reviewed under exacting scrutiny, but according to a less rigorous standard of whether there is a 'reasonable relation to any end within the competency of the State' (*Meyer v. State of Nebraska*, 262 U.S. 390, 403, 43 S.Ct. 625, 628, *supra; see, also, Cleveland Bd. of Educ. v. La Fleur*, 414 U.S. 632, 643, 94 S.Ct. 791, 797, 39 L.Ed.2d 52 [ (1974) ]; *Pierce v. Society of Sisters*, 268 U.S. 510, 535, 45 S.Ct. 571, 573 [69 L.Ed. 1070 (1925) ] *supra* ).... The State, in its role as *parens patriae*, has determined that, under certain limited circumstances, grandparents should have continuing contacts with the child's development if it is in the child's best interest.

*People ex rel. Sibley, etc. v. Sheppard* (1981), 54 N.Y.2d 320, 327–28, 445 N.Y.S.2d 420, 423, 429 N.E.2d 1049, 1052. *But see generally* The Constitutional Constraints on Grandparents' Visitation Statutes, 86 *Colum.L.Rev.* 118 (1986). Indiana's Act interferes with a parent's liberty interests only to observe its duty under the *parens patriae* doctrine and only upon a finding that it would be in the best interest of the child. IC 31–1–11.7–3.[4] Consequently, we find that the General Assembly has employed means reasonably related to a legitimate end of state government.

Reversed with instructions to set Bailey's petition for a hearing on the merits.

STATON, J., concurs.

HOFFMAN, J., dissents and files separate opinion.

HOFFMAN, Judge, dissenting.

I dissent from the majority's determination that Bailey may seek visitation rights under IND.CODE § 31–1–11.7–2 (1988 Ed.). Acts 1987, Pub.L. 293, § 7, which operates to give retroactive effect to IND. CODE § 31–1–11.7–2, has no application to Bailey. Her right to visitation was the subject of a former judgment that may not now be reached by retrospective legislation.

The controversy regarding Bailey's right to seek grandparental visitation had been reduced to judgment before the legislature enacted Acts 1987, Pub.L. 293, § 7. The legislature could not alter the outcome of the dispute once the rights of the parties had been settled by judgment. As this Court expounded in *State ex rel. M.T.A. v. Ind. Rev. Bd.* (1969), 144 Ind.App. 63, 253 N.E.2d 725:

> "The General Assembly cannot interfere with a judicial determination. Article 3 § 1 of the Constitution of the State of Indiana. Without a doubt the General Assembly had every right to give prospective and retroactive effect to their [sic] legislation.... However, the attempt to encroach upon the determination of a co-equal branch of government was an unwarranted and unconstitutional action by the General Assembly, and its application to the judgment of this court has no force and effect."

*Id.* at 88, 253 N.E.2d at 731–732.

While Acts 1987, Pub.L. 293, § 7 may otherwise permit retroactive application of IND. CODE § 31–1–11.7–2, the statute may have no such effect in Bailey's case. The judicial branch of government determined that Bailey's right to seek visitation terminated upon the adoption of Amy by Linda Menzie. *In re Visitation of Menzie* (1984), Ind.App., 469 N.E.2d 1225, 1227. Efforts by the legislature to change that outcome must be deemed ineffectual.

I vote to affirm the dismissal of the Petition for Grandparent Visitation.

---

4. The Act's most recent amendments became effective after the instant matter was already pending. Acts 1988 P.L. 99 § 20. These amendments further expand the conditions under which a grandparent may seek visitation rights and, as such, intrude still further into previously sacrosanct aspects of parents' rights. Thus, we do not here consider the validity of those provisions and how they impact parents' rights when the petitioning grandparent is a blood relative of the custodial parent.